JAMES MYERS v. STATE.

No. A-834.   Opinion Filed December 4, 1911.

(119 Pac. 136.)

1. RAPE—Elements of Offense—Degree. An act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under the age of 16 years, is rape in the second degree, whether such act is accomplished by means of force or with consent.

2. INDICTMENT AND INFORMATION — Duplicity — Charge of Rape. The information alleged that the defendant did "commit the crime of rape by then and there unlawfully, willfully, and feloniously rape, ravish, and carnally know" and have sexual intercourse with a female under the age of 16 years, to wit, the age of 15 years. Held, not duplicitous, as it only charges rape in the second degree.

3. RAPE—Evidence—Other Offenses. On a trial for statutory rape, where the female is under the age of consent, evidence of similar acts of sexual intercourse within the year preceding the time alleged in the information was properly admitted for the purpose of showing the intimate relations of the parties, and as corroborative of the evidence of the particular act relied upon for a conviction.

4. SAME—Evidence—Other Offenses. Evidence was admitted of the pregnancy of the prosecutrix and the defendant's treatment of her by giving her medicine, and his abduction of her for the purpose of concealing her pregnancy. Held, not error to permit the prosecution to introduce evidence which is competent and relevant as tending to establish the defendant's guilt of the crime charged, because it also tends to establish his guilt of another and different offense.

5. APPEAL AND ERROR—Record—Questions Presented for Review. Where persons who gave affidavit in support of an application

for change of venue in a criminal prosecution were called, sworn, and examined on the hearing of the application, but the case-made does not contain a transcript of their testimony so taken, the Criminal Court of Appeals will not review the action of the trial court in denying the application.

6. **APPEAL AND ERROR—Writ of Error—Presentation of Questions in Trial Court—Information.** The objection to an information that it states that the defendant waived a preliminary examination before a justice of the peace, and was by the justice held to answer, will not be considered by the Criminal Court of Appeals where it was not presented to the trial court by a plea in abatement, nor a motion to quash or set aside the information before the jury was sworn, but only by objection to the reading of the information to the jury.

(Syllabus by the Court.)

*Appeal from District Court, Caddo County; G. A. Brown, Judge.*

James Myers was convicted of statutory rape, and appeals. Affirmed.

*McKnight & Heskett,* for plaintiff in error.

*Charles West,* Atty. Gen., and *Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

DOYLE, J. The plaintiff in error, James Myers (hereinafter designated the defendant), was convicted in the district court of Caddo county of the crime of rape in the second degree, and sentenced to be imprisoned in the state penitentiary at hard labor for a term of 10 years. The judgment and sentence was pronounced and entered March 18, 1910. He has appealed from this judgment and the orders of the court denying his motions for a new trial and in arrest of judgment.

The assignments of error will be considered in the order presented in the defendant's brief. The information upon which the defendant was tried and convicted, omitting the title, verification, and indorsements, reads as follows:

"Now, at the February term of the district court of the Fifteenth judicial district of the state of Oklahoma sitting within and for the county of Caddo, in said state, begun and held at Anadarko, in said county and state, on the 1st day of February, in the year of our Lord, one thousand, nine hundred and nine, comes Theodore Pruett, county attorney, and gives the

court to know and be informed that on the ——— day of October, in the year of our Lord, one thousand, nine hundred and eight, at and within said county, one James Myers, then and there being, did then and there commit the crime of rape by then and there unlawfully, wilfully, and feloniously rape, ravish, and carnally know and have sexual intercourse with one Ada White, a female person under the age of sixteen years, to wit, of the age of fifteen years, and he, the said James Myers, being then and there a male person, and not the husband of her said Ada White; that the said James Myers waived a preliminary examination for the above offense before P. L. Jorgenson, justice of the peace in and for the city of Anadarko, Caddo county, Oklahoma, on the 20th day of January, 1909, and was by the said P. L. Jorgenson held to answer the same. Contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant filed a demurrer to the information upon the grounds:

"That said information is not direct and certain as to the offense charged, in this: That it merely charges the defendant with the offense of rape, and is not sufficient to show the defendant whether he is being prosecuted for rape in the first degree, or rape in the second degree.'

The judgment of the court overruling the demurrer was excepted to and is here assigned as error. Counsel contend that the allegation "rape, ravish, and carnally know" charges force, violence, and want of consent, which under our statute is rape in the first degree; that, eliminating this clause from the information, it charges rape in the second degree, thus charging two degrees of rape in one count; that for this reason the information is bad for duplicity. As we view it, the contention is without merit. Rape and its degrees is defined (section 2353, Comp. Laws 1909) as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: 1st. Where the female is under the age of sixteen years. * * * 4th. Where she resists but her resistance is overcome by force and violence."

Section 2356:

"Rape committed upon a female under the age of fourteen

years, or incapable, through lunacy or any other unsoundness of mind, of giving legal consent, or accomplished by means of force overcoming her resistance, is rape in the first degree."

Section 2357:

"In all other cases rape is of the second degree."

The information simply charges the crime of rape in the second degree under the first subdivision of the statute. The allegation, "rape, ravish, and carnally know," would be fully sustained by proof of carnal intercourse with a female under the age of 16 years. Whether the act is accomplished by means of force or with consent is immaterial. Therefore this clause did not extend, limit, or modify the crime charged, and might have been omitted. However, it is not inconsistent, and, at most, it may be treated as mere redundance. The demurrer was properly overruled.

The overruling of the defendant's application for a change of venue is assigned as error. The verified application of the defendant was supported by the affidavits of nine other affiants. The record shows that six of said supporting affiants were called, sworn, and examined upon the hearing of the application, but the case-made does not contain a transcript of their testimony so taken. In the absence of this testimony, this court will not review the action of the trial court thereon. The presumption is that the court properly denied the change of venue.

The overruling of the defendant's challange for cause to the juror W. M. Haslett is assigned as error. There was no error in the ruling of the court upon the qualifications of this juror. His examination did not show him to be disqualified within the statute and previous rulings of this court. *Turner v. State*, 4 Okla. Cr. 164, 111 Pac. 988.

The next assignment of error is that the court erred in overruling defendant's objection to the reading of the information to the jury. The record shows that after the jury was sworn to try the case the following objection was interposed:

"The defendant now objects to the reading of the information in this case to the jury for the reason that the information

contains allegations and surplusage prejudicial to the defendant."

It is here insisted that the following statement in the information was prejudicial:

"That said James Myers waived a preliminary examination for the above offense before P. L. Jorgenson, justice of the peace in and for the city of Anadarko, Caddo county, Oklahoma, on the 20th day of January, 1909, and was by the said P. L. Jorgenson held to answer the same."

If this objection had been properly made by plea in abatement, or motion to quash or set aside the information filed before the jury was sworn, any right the defendant might have would be preserved and reviewed upon appeal, but, where an objection to an information for a defect of form apparent on the face thereof is raised for the first time by an objection to the reading of the information to the jury, it comes too late, and will not be considered. However, it might be well to state that the following instruction was given by the court:

"You are instructed that the information in this case is no evidence of the defendant's guilt. It is merely the charge upon which he is placed on trial, and no juror should allow himself to be influenced in any degree against the defendant on account of the charge therein."

Three assignments of error are based on the rulings of the court in the admission of and in refusing to strike out certain evidence. Under these assignments, it becomes necessary to make a brief statement of the evidence.

It is undisputed that at the time in question Ada White was fifteen years of age. Ada White testified that she had known the defendant about five years; that at the time in question she was living with her parents on the defendant's ranch in Caddo county; that in the month of October, 1908, on returning from school, the defendant was at her home, and asked her mother if she could go with him to drive up some horses from the pasture; that her mother consented, and she went with him, and while ir the pasture he had intercourse with her; that she was not the wife of the defendant; that the defendant had had sexual

intercourse with her before that time; that in the spring of 1907 while she was at his ranch house he put his arms around her, had her sit on his lap, and laid her on a bed, and tried to have intercourse with her; that he tried several times thereafter to have intercourse with her; that in the fall of 1907, when she was herding his cattle, he rode up to her, and lifted her off of her horse, and succeeded in having intercourse with her by using vaseline; that this was the first time; that during that winter she helped to herd his cows, aud he would often go with her, and have intercourse with her; that the defendant had sexual intercourse with her off and on from the first time until the time alleged in the information, relating the time, place, and occasion of several such acts; that her "courses stopped" in July, 1908, and the defendant gave her three bottles of medicine and two boxes of some kind of pills to take, and her mamma gave her "Lida Pinkerton Medicine"; that the defendant told her not to take her mother's medicine, but to pour out just as much as she was supposed to take; that as a result of sexual intercourse with the defendant she became pregnant, and on March 24, 1909, a child was born to her; that the child died when it was 9½ months old; that on January 1, 1909, the defendant met her in the hay field, and took her in a buggy to Lawton, and from there to a place nine or ten miles below Chattanooga where the defendant had another ranch; that he told her he was taking her away so that her mother would not find out her condition; that while they were there he was arrested, and she only saw him once afterwards, which was at Oklahoma City when he tried to come into their house, and her mother shot him; that she was acquainted with the defendant's handwriting and identified a letter which was handed to her on the train while coming to the trial as his handwriting. The letter reads as follows:

"Oklahoma City, 2-15-09. Dear Ada: The bearer of this must have a talk with you; he will tell you some things that I want you to know. I am afraid that your mother and father will force you to testify in their case against me and ruin the best friend they have in the world. You must get very sick on your way up tomorrow and remain so until the trial will have to await

over for another court. Now, Ada, try this for once to be brave and save your best friend on earth. My God, can you forget what we used to talk so much about. It will be suicide for the old man. If you testify I will just have to kill myself; no pen for J. Myers."

On cross-examination it was shown that Myers frequently gave her money, and that in the fall of 1908 he gave her a pony.

Mrs. Azalia White testified: That she was the mother Ada White. That they lived on and near the defendant's ranch in the years 1907 and 1908. That the defendant frequently stopped at their house, and early in October, 1908, he came there and said that he wanted to change teams, and, when the girls came home from school, Ada went with him to drive the horses up from the pasture. That on January 1, 1909, they missed Ada. A few days later her brother brought her home. That later they went to live at Oklahoma City, and the defendant came to their home and rapped, and said:

" 'This is Jim Myers, and I want to see Ada.' I said, 'You are not my friend. You will go to hell and burn forever for what you have done.' And he said: 'I know it,' and I said: 'How dare you come to my house and demand entrance after you have wrecked and ruined my family.' "

That she then shot him, and he ran away.

J. L. Jackson testified that he was acquainted with the defendant; that on January 2, 1909, as deputy sheriff of Comanche county, he arrested him on a warrant issued on a charge of kidnapping Ada White at the defendant's ranch on Deep Red, 35 miles south of Lawton; that Ada White was then with him, and, when he first saw them, the girl was in a tent; that he turned the girl over to her brother at Chattanooga; that the defendant volunteered the statement that "he would not have harmed the girl; that he was just trying to show her a friendly favor that the family would not do, and, if the girl had not been tired and worn out, they would not have got her; that he would have had her on the Ft. Worth and Denver train that day."

W. P. Smith testified that as an officer he took charge of the defendant at Lawton on a warrant of arrest for rape, and

while bringing him to Caddo county he voluntarily stated that:

"He had a nice place prepared for her in California where she would be well cared for, and, if Mr. White had kept still, he would have taken her·there, and the girl would have been back here soon, and nobody would have known anything about it, and he was doing it for the interest of the girl and the sympathy he had for her."

There was no evidence offered on the part of the defendant.

The evidence relating to the pregnancy of the prosecutrix and the birth and death of the child, and the evidence relating to the medicine which prosecutrix testified was furnished her by the defendant, was introduced over the defendant's objections thereto as being incompetent and irrelevant, and a motion was also made to withdraw this evidence from the consideration of the jury for the same reason.

In support of this assignment, counsel cite the case of *People v. Soto,* 11 Cal. App. 431, 105 Pac. 420, and quote from the opinion the following language:

"While proof of pregnancy of a child under the age of consent has been held to be evidence that the statutory crime of rape has been committed, it has never been held admissible, so far as we are aware, except it tends to prove the *corpus delicti."*

On the undisputed facts in the case at bar it would be a sufficient answer to this contention to further quote the concluding language of the opinion in the Soto case, which is as follows:

"While under our system of pleading one particular act or some special time is required to be selected for the purpose of a conviction in cases of this character, the records in this court disclose that this offense, the debauching of a child, is frequently accompanied by a series of acts of sexual intercourse, and the punishment for this infamous crime ought not to be made to hang upon a technical application of the rules of pleading and evidence, where the only question is which one of innumerable acts was selected by the district attorney as the basis of the prosecution."

There are several reasons why the rulings of the trial court should be sustained. The prosecutrix had testified without objection to numerous acts of sexual intercourse, and the state had not been asked to elect which of these it would rely upon for

a conviction. It appears, however, that the case was tried with reference to the act committed in October, 1908, as charged in the information, and no testimony was offered or admitted as to any subsequent act of intercourse. While there is a direct conflict of authority on the admissibility of evidence of subsequent acts of sexual intercourse, the rule is almost uniform that in a prosecution for statutory rape of one under the age of consent, evidence of acts anterior to the commission of the act charged is admissible, not primarily to prove other offenses, but for the purpose of showing the intimate relations of the prosecutrix and the defendant, and as corroborative of the evidence of the particular act charged.

It logically follows that the correlative facts of the pregnancy of the prosecutrix and the defendant's treatment of her by giving her medicine, and his abduction of her for the purpose of concealing her pregnancy, and the birth and death of her child, being so intimately and inseparably connected with the circumstances of the specific offense charged, that this evidence was competent and relevant for the purpose of showing the relations of the parties, and as corroborative circumstances to be considered by the jury in determining whether or not the defendant committed the specific offense charged.

The assignments of error based upon the instructions of the court, and the refusal of the court to give the single requested instruction to direct a verdict of not guilty, are as devoid of merit as the subsequent assignment that the verdict is contrary to law, and is not sustained by sufficient evidence.

The motion for a new trial and in arrest of judgment presents no questions that have not been considered. The defendant on the evidence adduced is beyond a possible doubt guilty of one of the most heinous crimes that can be committed, alike against society and the law, and he has been adjudged to suffer the maximum punishment of the law. However, there is no adequate punishment for such a crime as his. The anomalous provision in the Penal Code that makes this offense rape in the second degree is well worthy of the consideration of the Legisla-

ture, and it is to be hoped that it will amend the provision defining rape in the first degree to read under the age of 18 years, or at least 16 years, instead of 14 years, as it is now.

The judgment of the district court of Caddo county is in all things affirmed. Mandate to issue forthwith.

FURMAN, P. J., and ARMSTRONG, J., concur.