## J. B. WINES v. STATE.

No. A-1016.   Opinion Filed June 1, 1912.

1.   **INDICTMENT AND INFORMATION — Complaint — Variance.** Const., art. 2, sec. 17, prescribes that: ''No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination.'' **Held,** that if an accused, on being brought before the examining magistrate, waives his right to a preliminary examination, and it appears that the charge in the preliminary complaint is substantially the same as that set forth in the information filed by the county attorney in the district court, a plea of a want of a preliminary examination, or a variance between the preliminary complaint and the information, is unavailable.

2.   **RAPE—Degree of Crime—Second Degree.** An act of sexual intercourse accomplished with a female, not the wife of the perpetrator, over the age of fourteen years and under the age of sixteen years, is rape in the second degree, whether such act is accomplished by means of force or violence sufficient to overcome any resistance she might make, or with her consent.

3. **SAME—Resistance.** Where the evidence on the part of the state tended to show an act of sexual intercourse without the consent and against the will of the prosecutrix, and that she was prevented from resisting through fear, this under the statute could only be rape in the second degree, and a conviction on a verdict of guilty of rape in the first degree will be set aside as contrary to the evidence.

4. **SAME—Threats—Fear.** Under the fifth subdivision of section 2353, Comp. Laws 1909, defining rape, in order to convict where resistance is not shown, there must be evidence tending to show that the defendant made threats of immediate great bodily harm to the prosecutrix, accompanied by apparent power of execution, which at the time was apparent to her; and that prosecutrix believed at the time such threats were made that they would be carried into execution if she did not submit to the act.

(Syllabus by the Court.)

*Appeal from District Court, Washita County; James R. Tolbert, Judge.*

J. B. Wines was convicted of rape in the first degree, and appeals. Reversed.

The plaintiff in error was convicted of the crime of rape in the first degree and sentenced to ten years' confinement at hard labor at the state prison. The judgment and sentence were pronounced and entered on the 12th day of November, 1910. From the judgment and orders overruling motions for new trial and in arrest of judgment, the defendant appealed by filing in this court on February 17, 1911, a petition in error with case-made.

The defendant was a farmer, 50 years of age. He had lived continuously for over eighteen years on his homestead about fourteen miles southwest of Cordell. He was never before accused of any crime, and he had served as deputy sheriff of Washita county four years. His only child, a boy, died; and being in Ft. Worth with his wife in January, 1904, or 1905, they went to the Benevolent Orphans' Home for the purpose of adopting a boy. Finding no boy suitable, the matron of the home induced them to take the prosecutrix; stating her age to be, in her presence, eleven years. They brought her to their homestead in Washita county and sent her to school and cared for her until July 21, 1910, when she left, and the next day filed a complaint against the defendant charging rape.

The evidence for the state tended to prove the following facts: The complainant, Willie T. Dekle, testified that prior to July 20, 1910, she had lived for over five years with Mr. and Mrs. J. B. Wines on their homestead; that prior to that time she stayed about three months at the Orphans' Home at Ft. Worth; had lived with her mother for about two years before being placed in the Orphans' Home; during that time was on the stage for several months; had lived a year with an old couple in Minnesota; had lived three or four years with an aunt in Alabama; that she was born at Houston, March 23, 1895, and was fifteen years of age. She further testified that Mrs. Wines went on a visit to Tillman county, July 15th; that on Saturday night after Mrs. Wines went away the defendant came to her room and attempted to have sexual intercourse with her, but that he did not do as he intended that night; that the next night he did not disturb her; that on Monday night he tried to persuade her to consent to sexual intercourse, but did not accomplish his purpose. That Tuesday night he again came to her room, and through fear she submitted. That this was the first time he had sexual intercourse with her. That the next day, Wednesday, she went with the defendant to the town of Sentinel in a buggy; that he left her at Ramsey's store, telling her to stay there until he returned; that she stayed there a while, then went out on the street and met him and told him that she was going to visit Mrs. Davies; that he told her to hurry back. That she found that Mrs. Davies was not at home, and she went to Mrs. McAtee's, where Mrs. Davies was visiting, staying there about two hours, then returned to Ramsey's store; that she did not tell Mrs. Davies what defendant had done, because the defendant and Mr. McAtee were great cronies and she was afraid to say anything about it to Mrs. Davies before Mrs. McAtee. She rode back with the defendant to their home that evening, and that night the defendant came to her bed again and begged her to let him do as he wished to, but she would not consent; that he stayed there until about 12 o'clock; that all she could do was to push him away and beg him to let her alone; that he finally overpowered

her and had sexual intercourse with her. That this was the second and last time. That when she was thirteen years old the defendant tried to persuade her to allow him to have sexual intercourse with her; that his wife heard part of what he said; that she went to singing school short terms for several years, and the defendant always went with her; that on these occasions he had never insulted her. That she had secured two letters from her mother about two months before leaving the defendant, and this was the only time she had heard from her mother while living with the defendant; that the defendant had whipped her for writing letters to young men and had forbidden her to keep company with young men; that she was engaged to be married to a neighbor's son, Otis Higgenbottom, and the defendant would not permit her to marry him; that the defendant worked in the field Tuesday and Wednesday, and a neighbor, Mr. Ne-Smith, came there for grain and talked to her on Thursday while the defendant was in the field; that Thursday afternoon the defendant said she could go and visit Mrs. Jayrose; that when she went to Mrs. Jayrose she told her how the defendant had mistreated her. That she did not return to her home, but went to Cordell the next morning and swore to the original complaint, and three or four days later sued the defendant for $10,000 in the district court of Washita county as damages for his mistreatment of her.

Mrs. Lettie Jayrose testified that she lived a quarter of a mile from the defendant; that the prosecutrix came to her home July 21st, and after staying there about an hour told her the defendant had mistreated her; that the defendant called that evening and asked where prosecutrix was.

C. N. Cook testified that he lived about half a mile from the defendant; that prosecutrix was there on the evening of July 21st and told him that the defendant had mistreated her.

Mrs. Bunch Carter testified that she lived at Pine Apple, Ala., and was prosecutrix's aunt; that after prosecutrix was two years old she lived with her for three or four years; that the date of her birth was March 23, 1895. On cross-exam-

ination she identified four letters that she had written at various times, wherein she stated prosecutrix was born March 24, 1894. In explanation she stated that she was mistaken about prosecutrix's age when she wrote the letters; that prosecutrix's mother was living, but, owing to the fact that she was a public woman, they did not disclose to her the place where her daughter, the prosecutrix, lived.

Two doctors testified that on July 26th they examined prosecutrix and found there was no hymen, but that there were no bruises, lacerations, or inflammation of her genital organs; that their examination was made by request of the prosecution.

Mrs. Varna Davies testified that she had known prosecutrix for about six years; saw her on the 20th day of July at Sentinel; was with her a couple of hours; she acted perfectly calm while she was in her presence; that was at the home of Mrs. McAtee.

On behalf of the defendant, T. H. NeSmith testified that he was at the defendant's place on Thursday and saw prosecutrix on the porch; did not see anything wrong, and she did not make any complaint; that the defendant was at the time harrowing in the field about half a mile from the house; that he also saw her Wednesday morning in the pasture driving up the cows, but did not see the defendant at that time.

Miss Rosa Higgenbottom testified that a few days after prosecutrix came to this county they were going to school together, and prosecutrix said she would be eleven years old her next birthday. That they were together often, and several times conversed about the difference in their ages; that witness will be seventeen in November.

Mrs. Fannie Wines testified that she was the wife of the defendant; that she did not overhear any insulting language used by the defendant to prosecutrix when she was thirteen years old, and prosecutrix had never told her of any mistreatment of her by the defendant. That when she returned she found the nightgown and pair of drawers between the mattress and the springs of the bed in prosecutrix's room; that they were not

torn nor stained; that she gathered prosecutrix's clothes for Mr. Day and Mr. Allen, who came after them, and put all she could in the trunk, and they said that was all they could take; that she afterwards carried other clothes to prosecutrix, and that some of her clothes were there yet.

The defendant was a witness on his own behalf and denied that he had been guilty of any misconduct towards the prosecuting witness. It appears that the mother of the prosecuting witness was a public woman, conducting a house of prostitution at Ft. Worth for many years.

*Smith & Wagoner,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

DOYLE, J. The information contains two counts. The first charges that in Washita county on or about the 20th day of July, 1910:

"Did then and there, willfully, unlawfully, intentionally, feloniously, make an assault in and upon one Willie T. Dekle and ravish and have sexual intercourse with the said Willie T. Dekle, a female not the wife of the said J. E. Wines, and said act of sexual intercourse being then and there feloniously accomplished by the said J. B. Wines, with the said Willie T. Dekle, by force and violence without the consent and against the will of the said Willie T. Dekle. The said Willie T. Dekle resisting said J. B. Wines to prevent said act of sexual intercourse, but her resistance being overcome by the said J. B. Wines by force and violence contrary to," etc.

Any by the second count it was charged that:

"On or about the 20th day of July, 1910, same being the time, place, and by the same act mentioned and set out in the first count of this information, commit the crime of rape in and upon one Willie T. Dekle, the person mentioned and set out in the first count of this information in the manner and form as follows, to wit: Did then and there, willfully, unlawfully, intentionally and feloniously commit an act of sexual intercourse accomplished with the said Willie T. Dekle, a female, and did then and there carnally know her and have sexual intercourse with her; the said Willie T. Dekle being then and there at the

time of having said sexual intercourse as aforesaid with the said J. B. Wines under the age of sixteen years, and the said Willie T. Dekle was then and there not the wife of the said J. B. Wines at the time of said act of sexual intercourse, contrary to," etc. .

Upon arraignment the defendant filed a motion to quash the first count of the information, for reasons in substance as follows: That said count is in conflict with section 17 of art. 2 of the Bill of Rights of the Constitution of the state, in that said count charges the defendant with the commission of the crime of rape in the first degree, said defendant never having a preliminary examination before a committing magistrate on any such charge, nor ever having waived such preliminary examination. Second. That on the 22nd day of July, 1910, a complaint was filed in the county court of Washita county charging the defendant with the crime of rape on or about the 19th day of July, 1910, with one Willie T. Dekle, a female under sixteen years of age and not the wife of the defendant, and pursuant to said complaint a warrant was issued and the defendant arrested. On the 24th day of July he was arraigned on said complaint, waived a preliminary examination, and was bound over to await the action of the district court. Which motion was duly verified by the defendant. The overruling of this motion by the trial court is assigned as error.

Section 17 of the Bill of Rights prescribes:

"No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

That the defendant did not have a preliminary examination before an examining magistrate, or did not waive such preliminary examination, is a fact to be established by the defendant on a plea in abatement or on a motion to quash. *Williams v. State,* 6 Okla. Cr. 373, 118 Pac. 1006.

The defendant having waived his right to a preliminary examination, and no testimony having been taken, the county attorney was authorized to file an information in the district

court for the offense charged in the preliminary complaint before the examining magistrate. The preliminary complaint in this case charged the crime of rape, and was sufficient to sustain either count of the information filed in the district court. There can be no question but that the defendant's constitutional right to a preliminary examination was fully accorded in this case, and that the trial court properly overruled the motion to quash the information.

Certain assignments of error are predicated upon the rulings of the trial court in admitting and excluding evidence. No useful purpose would be served in discussing those in detail, for the reason that on the undisputed facts, in our opinion, the verdict of guilty of rape in the first degree is contrary to the law and to the evidence.

Rape and its degrees are defined in our Penal Code as follows:

Section 2353, Comp. Laws 1909:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: First. Where the female is under the age of sixteen years. Second. Where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character. Third. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent. Fourth. Where she resists, but her resistence is overcome by force and violence. Fifth. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution. Sixth. Where she is prevented from resisting by any intoxicating, narcotic, or anesthetic agent, administered by or with the privity of the accused. Seventh. Where she is at the time unconscious of the nature of the act, and this is known to the accused. Eighth. Where she submits under a belief that the person committing the act is her husband, and this belief is induced by artifice, pretense or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

Section 2356:

"Rape committed upon a female under the age of fourteen years, or incapable, through lunacy or any other unsoundness of mind, of giving legal consent, or accomplished by means of force overcoming her resistance, is rape in the first degree."

Section 2357:

"In all other cases, rape is of the second degree."

Section 2358:

"Rape, in the first degree is punishable by imprisonment in the state prison not less than ten years."

Section 2359:

"Rape in the second degree is punishable by imprisonment in the state prison not less than five years."

In order to support a conviction of rape in the first degree under the first subdivision, it must appear from the evidence that the female was under the age of fourteen years; and under the fourth subdivision, it must appear from the evidence that the defendant, with force and violence sufficient to overcome any resistance she might make, accomplished the act of sexual intercourse.

It is undisputed that at the time in question the prosecutrix was over the age of fourteen years. An act of sexual intercourse accomplished with a female, not the wife of the perpetrator, over the age of fourteen years and under the age of sixteen years, is rape in the second degree, whether such act is accomplished by means of force and violence sufficient to overcome any resistance she might make, or with her consent. The law conclusively presumes that the female, being within the age fixed by the statute, is incapable of consenting, and therefore the act is by force and violence.

Where the female is over the age of sixteen years and under the age of eighteen years, and of previous chaste and virtuous character, it is also rape in the second degree; yet the defendant may be charged, as in the first count of this information, with rape in the first degree, where the proof shows the female to be over sixteen years of age and the qualifying clause of the second subdivision has been omitted.

The anomalous provision in the Penal Code that makes the offense rape in the second degree is commented on in the case of *Myers v. State,* 6 Okla. Cr. 389, 119 Pac. 136.

While the evidence on the part of the state tended to show that the prosecutrix was under the age of sixteen years, the evidence offered by the defendant tended strongly to show that she was over the age of sixteen years.

The testimony on the part of the state tends to show two acts of sexual intercourse without the consent and against the will of the prosecutrix, and that she was prevented from resisting through fear. This, under the statute, could only be rape in the second degree. To support a conviction for rape in the second degree, under the fifth subdivision, the evidence must show threats of immediate and great bodily harm, accompanied by apparent power of execution. Not only this. but the prosecutrix must have believed at the time that such threats would be carried into execution if she did not submit to the act. Nothing less would justify a conviction. If the verdict had been rape in the second degree, we would yet have great doubt whether it should be upheld, under the evidence in the case.

The testimony of the prosecutrix that the defendant had sexual intercourse with her, and that she submitted through fear or the dread of greater violence, is without corroboration of any kind, and, while the testimony of the prosecutrix, uncorroborated, may be sufficient to justify a conviction for rape under our statute, in order to do so her testimony should stand unimpeached. The evidence shows that her person bore no marks or bruises, and that her underclothes were neither stained nor torn; that she was examined by two physicians on the request of the prosecution a few days after the alleged outrage, and they found no injuries, laceration, or inflammation of her genital organs, except the absence of the hymen, and they did not undertake to determine or state the cause of its absence. On their cross-examination they stated that the absence of the hymen does not of itself prove that a woman has had sexual intercourse. From their testimony and that of other physicians who testified

as experts on the part of the defendant, indications of a recent rupture of the hymen will last from eight to twenty days. The testimony of the physicians, taken as a whole, tends to discredit the testimony of the prosecutrix as to the violation of her person. The evidence shows that the home of the defendant was near a public road; that the doors and windows of the house were open day and night; that defendant each day worked on his farm, distant from the house, and that there was no time after the first attempt to ravish her that prosecutrix testifies to, that she could not have left the defendant's home and gone to the neighbors for protection. That there was nothing unusual in her appearance to the lady she visited at Sentinel the day following the alleged outrage, and her failure to disclose the fact of the alleged outrage at the first opportunity is a strong circumstance casting great discredit on her testimony and tends strongly to disprove the truth of the accusation. It is the natural impulse of every honest and virtuous female to flee from threatened outrage, and if assaulted to make complaint at the first opportunity, and where this is not done and no reasonable explanation is made it is a strong, but not a conclusive, presumption against the truth of the accusation.

By prompt disclosure the injured party is thereby shielded from unjust inferences and society guarded in a measure against the possible machinations of designing and evilminded females.

Says Mr. Bishop:

"The real facts in a case of alleged rape are commonly known only to the defendant and the complaining woman. And she may be honest or dishonest, free from guile or a crafty plotter against him, moved by a sense of justice or by a desire to conceal the shame of having voluntarily surrendered her virtue. If she speaks truth, no completely satisfactory confirmation of her testimony can often be had; if falsehood, nothing is so difficult as for the defendant to make the falsity appear. His temptation to clear himself by foul means, where he cannot by fair, is very great; hers may be, but it is not necessarily, almost as strong to convict him by perjury where the truth will not avail. Therefore it cannot be otherwise than that convictions will sometimes be wrongly had, and sometimes the guilty will go free, and there should be a conviction only on the clearest and most

convincing proofs. In consequence of this, the law not only permits the ordinary tests to be applied to the complaining witness, but it has some special ones not permissible in other cases; as * * *

"On ordinary grounds, anything which the woman said or did of the *res gestae* of the ravishment will be admissible in evidence. . And there is considerable room for strengthening her testimony in this way, especially where she exhibits marks of violence in connection with expressions indicative of her physical condition. But aside from and beyond this it is competent to show by her, or by others, or both, that after the alleged rape, especially recently after, she complained of it to suitable persons, and exhibited, if such was the fact, marks of violence and other like indications; as confirmatory of her sworn testimony. It is of special practical importance that the complaint was recent, and explanations of any delay are competent. But the doctrine in strict law appears to be that delays, especially if not great, only weaken the effect of her evidence with the jury." (2 Bishop New Cr. Pro., secs. 962 and 963.)

The trial court refused to give a requested instruction defining rape in the second degree under the fifth subdivision. Under the evidence in this case this was clearly error.

The court failed to instruct the jury that if they should find the prosecutrix, at the time alleged, was over the age of fourteen years and under the age of sixteen years, then in any event the offense could only be rape in the second degree. The omission to properly instruct on this phase of the case was also error.

For the reasons stated, the judgment of the district court of Washita county is reversed.

FURMAN, P. J., and ARMSTRONG, J., concur.