OLIE SAYERS *et al.* v. STATE.

No. A-1803. Opinion Filed November 1, 1913.

(135 Pac. 1073.)

1. PRELIMINARY COMPLAINT — Sufficiency of Verification. Where a preliminary complaint charging a felony is sworn to positively by some person, it is sufficient of itself to authorize the magistrate to issue a warrant for the arrest of the defendant, and it is sufficient to authorize the magistrate to hold a preliminary examination.

2. INDICTMENT AND INFORMATION — Jurisdiction — Preliminary Examination. The fact that there was a preliminary examination and a judicial determination thereon by the magistrate, that a felony had been committed, and that there is probable cause to believe the defendants guilty thereof confers jurisdiction on the district court and authorizes the county attorney

to file an information in said court charging the crime committed according to the facts in evidence on such examination.

3.    APPEAL—Discretionary Ruling—Change of Venue.   An application for change of venue is addressed to the sound discretion of the court, and this court will not reverse the ruling of the trial court denying such application unless it is made to appear that there has been such an abuse of discretion as to constitute a denial of a substantial right.

4.    APPEAL—Discretionary Ruling—Continuance.   An application for continuance in a criminal case is addressed to the sound discretion of the trial court, and its action thereon will not be disturbed, unless there appears to have been a clear abuse of discretion.

5.    CRIMINAL LAW—Election of Defenses.   When a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one.

6.    APPEAL—Verdict.   It is the province of the jury to determine questions of fact and decide between conflicting inferences, and the duty of this court to interfere arises only when it can see that the verdict is contrary to the evidence or appears to have been influenced by passion or prejudice.

7.    INDICTMENT AND INFORMATION—Preliminary Complaint— Sufficiency.   A preliminary complaint in a rape case is sufficient where it charges the crime substantially in the language of Rev. Laws 1910, sec. 2414, defining rape.

8.    RAPE—"Previous Chaste and Virtuous Character."   The phrase "previous chaste and virtuous character" means in law, as in morals, a female who has never voluntarily indulged, out of wedlock, in sexual intercourse.

*Appeal from District Court, Lincoln County;*
*Chas. B. Wilson, Jr., Judge.*

Olie Sayers and another were convicted of rape, and bring error.   Affirmed.

On the 22d day of July, 1911, a complaint was filed before the judge of the county court, charging that the defendants on the 20th day of July, 1911, "did feloniously have and accomplish sexual intercourse with Mary Mehringer, a female over the age of sixteen and under the age of eighteen, of previous chaste character, and not then and there the wife of the defendants," etc.   Which complaint was verified by Mary Mehringer and warrant issued thereon, and the defendants were apprehended.

On the 6th day of September, 1911, another complaint was filed which charged:

"That on the 20th day of July, A. D. 1911, in the county of Lincoln and state of Oklahoma, one Olie Sayers and Rolla Sollers and Charles Endicott, then and there being, did then and there willfully, unlawfully, and feloniously in and upon Mary Mehringer, a female then and there being, did then and there unlawfully, violently, forcibly, and feloniously make an assault, and her (the said Mary Mehringer) then and there resisting, and said resistance being overcome by force and violence then and there, unlawfully, forcibly, and violently and against her will, feloniously did have and accomplish sexual intercourse with the said Mary Mehringer, she not being then and there the wife of the said Olie Sayers, Rolla Sollers, and Charles Endicott, contrary to," etc.

This complaint was sworn to positively by Fred A. Wagoner.

On the 8th day of November, the defendant filed a motion to quash the warrant and complaint for the reason that the same was not issued upon a duly verified complaint as required by the Constitution. Which motion was overruled. Thereupon the defendants filed a general demurrer to the complaint, which was overruled. A preliminary examination was had upon the second complaint.

Mary Mehringer testified that she was sixteen years of age on the 20th of March, 1911; that on the night of the 20th of July, 1911, the defendants accomplished acts of sexual intercourse with her by force and violence, overcoming her resistance. The details of her relation need not be repeated here.

Roy Scott, as a witness for the state, testified in substance that he was with Mary Mehringer and the defendants took her by force from the highway through the fence into a wood pasture, overcoming her resistance, and threw her down, and that she called for him to come and protect her.

At the close of this testimony the state rested. The defendants did not offer any testimony.

The judge of the county court made the following order:

"The court finds that the offense charged in the complaint herein has been committed, and that there is sufficient cause to believe that the defendants, Olie Sayers, Rolla Sollers, and

Charles Endicott, to be guilty of said crime and are therefore ordered held to the district court in said county and state."

On the 21st day of November, 1911, there was filed in the district court an information.

On the 5th day of December, 1911, leave of court having first been obtained, there was filed by the county attorney an amended information charging:

"That Olie Sayers, Rolla Sollers, and Charles Endicott, late of the county aforesaid, on the 20th day of July, in the year of our Lord one thousand nine hundred and eleven, in the county of Lincoln and state of Oklahoma, aforesaid, then and there being, did then and there willfully, unlawfully, and feloniously, violently and forcibly have and accomplish sexual intercourse with Mary Mehringer, a female, against her will; she (the said Mary Mehringer) then and there resisting and her said resistance being overcome by force and violence, and she (the said Mary Mehringer) not being then and there the wife of the said Olie Sayers, Rolla Sollers, and Charles Endicott. This contrary to," etc.

Upon arraignment defendants filed a motion to quash the information, which was overruled. Thereupon they filed a general demurrer to the information, which was overruled, and the case was set for trial December 19th. At that time the case was continued to December 27, 1911, and the county attorney asked leave to dismiss as to the defendant Charles Endicott that he might be used as a witness on the part of the state, and it was by the court so ordered.

On the 27th day of December the defendants filed an application for a change of venue, which was overruled. Thereupon they filed an application for continuance, which was granted, and the case was set for trial on the 13th day of February, 1912.

On the 15th day of February the jury rendered their verdict finding the defendants "guilty as charged in the information of rape in the first degree" and assessing their punishment at imprisonment in the state penitentiary for ten years.

Motions for new trial and in arrest of judgment were duly filed. On the 13th day of March, 1912, these motions were overruled, and the court pronounced judgment and sentenced the defendants in accordance with the verdict of the jury.

To reverse the judgment the defendants appealed by filing in this court on August 6, 1912, a petition in error with case-made.  ·

*Geo. B. Rittenhouse, F. A. Rittenhouse, Roy Hoffman,* and *Emery A. Foster,* for plaintiffs in error.

*Charles West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above).   The plaintiffs in error, whom we shall hereinafter denominate the defendants, claim a reversal of the judgment upon numerous assignments of error, but we shall consider only those which we deem of sufficient moment to warrant specific mention.

The first is that the court erred in overruling the defendants' motion to quash the information.   In support of the motion the transcript of the record and proceedings had before the examining magistrate was offered in evidence.   Counsel in their brief say:

"Our contention is that to authorize the issuance of a warrant of arrest there must be filed with the magistrate a complaint verified by the affidavit of one who knows the facts of his own knowledge."

—and that for this reason the defendants' motion to quash the original complaint should have been sustained, and the district court was therefore without jurisdiction to try said defendants upon an information based upon said complaint.

The original complaint upon which warrants issued for the defendants was verified by the prosecutrix.   The second complaint was sworn to positively by Fred A. Wagoner.   Where a complaint charging a felony is verified as true in positive terms, such verification constitutes a sufficient showing of probable cause to authorize the issuance of a warrant of arrest and to hold a preliminary examination before an examining and committing magistrate.   It is a sufficient compliance with that provision of the Bill of Rights (section 30) which provides:

"And no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

The evidence offered on the part of the state upon the preliminary examination was sufficient to show that the crime of rape had been committed, and that there was sufficient cause to believe the defendants guilty thereof. The fact that there was a preliminary examination and a judicial determination thereon by the examining and committing magistrate, that a felony had been committed, and that there is probable cause to believe the defendants guilty thereof confers jurisdiction on the district court and authorizes the county attorney to file an information in said court charging the crime committed, according to the facts in evidence on such examination. *Williams v. State,* 6 Okla. Cr. 373, 118 Pac. 1006.

It is also urged that the order of the committing magistrate was insufficient in that the preliminary complaint is insufficient to charge the crime of rape. The objection is not well taken. The complaint charges the acts constituting the crime substantially in the language of the statute, which defines rape as follows (section 2414, Rev. Laws 1910):

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: * * * 4th. Where she resists but her resistance is overcome by force and violence."

The record clearly shows that the district court had jurisdiction to try the case. The motion to quash was therefore properly overruled.

When the case was first called for trial in December, the defendants filed their affidavit for change of venue on the ground: "That the minds of the inhabitants are prejudiced against the defendants, and that a fair and impartial trial cannot be had in Lincoln county." The application was also supported by the affidavits of I. N. Oliver, A. L. Faulkenstein, and S. Vanderbilt. The state filed more than a dozen counter affidavits. On the issue thus joined, the state called the defendants' supporting affiants and others as witnesses. The court, after hearing the testimony, overruled the application.

The application for change of venue in a criminal case is addressed to the sound discretion of the court, and this court will

not reverse the ruling of the trial court denying an application for a change of venue unless it is made to appear that there has been such an abuse of discretion as to constitute a denial of a substantial right. *Turner v. State,* 4 Okla. Cr. 164, 111 Pac. 988. A careful examination of the record convinces us that the court very properly overruled the application for a change of venue.

When the case was called for trial on February 13th, the defendants filed an application for continuance. It appears from the record that a continuance on the application of defendants had been granted in December, when the case was first called for trial. Four of the absent witnesses named in both applications were never found by the sheriff, although subpoenaes had been issued for them.

The order of the court overruling the motion for continuance is in part as follows:

"The court further finds that the nature of the testimony the said witnesses would give if present and testifying in the trial of this case is fully set out in this motion for a continuance, and the general nature of said testimony is that said witnesses would testify that the prosecuting witness in this case, Mary Mehringer, was, at and previous to the time of the alleged crime charged in this case, a person whose general reputation for chastity in the community in which she lived was bad, and that said witnesses had, prior to the alleged date of the said alleged crime, had sexual intercourse with the said prosecuting witness, Mary Mehringer. The court finds that the continuance heretofore granted in said case was granted upon a similar showing by said defendants. Wherefore, for the above reasons and for other reasons apparent to the court, the court finds that the said motion for continuance should be and the same is hereby overruled."

No rule is more firmly esatblished than that this court will not reverse a conviction upon the ground that the trial court erred in refusing to grant a continuance, unless it appears that such court has manifestly abused its discretion in refusing it. The application for a continuance does not in our opinion disclose such diligence on the part of the defendants as the law

requires or such as made it the duty of the court to grant a further continuance.

Several errors are assigned upon rulings of the court in admitting and excluding evidence. No useful purpose would be served in discussing these in detail. Suffice to say that we have carefully examined them and are satisfied that no errors were committed prejudicial to the substantial rights of the defendants. The remaining errors assigned which we deem necessary to discuss require a brief statement of the facts disclosed by the evidence, also extracts from the testimony of certain witnesses.

The parents of the prosecutrix and the defendant Olie Sayers lived a few miles northeast of Agra; at the time in question she was working as a house maid at the home of Mr. Newman, in Agra. Roy Scott, who was staying across the street from Newman's, came over to spend the evening. Shortly after his arrival Orley Sayers, a brother of the defendant Olie Sayers, called at Newman's and invited Mr. Newman's daughter, a fifteen year old girl, and the prosecutrix to go buggy riding. The girls, together with Roy Scott, went with Orley Sayers and he drove out northeast of Agra about a mile and told Roy Scott and the prosecutrix to get out of the buggy and they did so; he stated that he would be back in a short time and drove on. The prosecutrix and Roy Scott walked a short distance and sat down by the side of the road. Another buggy came along, containing three boys, and passed them and stopped. One of the boys got out and walked back. The prosecutrix and Roy Scott got up and walked down the road, arm in arm. These defendants left their buggy and walked after this couple, overtaking them; Olie Sayers grabbed the prosecutrix around her waist and Rolla Sollers took hold of her arm and they dragged her off the road into a pasture. Charles Endicott followed them. Olie Sayers threw her down and ravished her while the other two held her. He was followed by Rolla Sollers, and he by Charles Endicott. Olie Sayers then repeated his performance, and was again followed by Rolla Sollers. Endicott then left and walked to town.

Prosecutrix testified that she was sixteen years of age the 20th day of March, 1911. That she had been working away from home since she was twelve years old. That when Olie Sayers threw her down she hallowed for Roy Scott and called, "Roy! Roy! Come here and help me." That Rolla Sollers put his hand over her mouth and he and Charles Endicott held her hands and feet while Olie Sayers had intercourse with her. That these defendants had intercourse with her three times each and Charles Endicott once before she was allowed to get up. That she never did consent and was all the time trying to get away from them. That she had bruises on her arm. That she was wearing a new calico dress and it was torn under the sleeves and up the back and her underwear was torn. That Olie Sayers then took her to his buggy and drove until they met Ivy Newman and Orley Sayers. That Ivy Newman and Roy Scott returned to town with her in Olie Sayers buggy. On cross-examination she stated that she had gone with Olie Sayers for several months, and during that time he had sexual intercourse with her six or seven times forcibly and against her will, and she had quit going with him in April; that she was afraid to tell her father because he mistreated her.

Roy Scott testified that Olie Sayers grabbed the prosecutrix around the waist and Rolla Sollers took hold of her arm, and, while she was pulling back and asking them not to take her, they took her from the road into the pasture and threw her down and he walked away. That when he was leaving the prosecutrix called him by name and asked him to come back and protect her. That later Sollers met him and asked him where Orley and Ivey were, and they walked up the road and found them.

Charles Endicott testified that Olie Sayers asked him to take a ride. That he drove out northeast from Agra and they passed a boy and girl sitting by the road, and Olie asked him to go back and see who it was and talk to them, saying that the reason he did not want to go back was that the girl was mad at him, and he walked back, meeting Earl Edgecombe and Emmet Johnson in the road, and then passed Roy Scott and Mary Mehringer. That the couple got up and started on and he followed them.

That they walked by the buggy; Sollers was in the buggy, and Olie Sayers on the ground. That the couple soon came back and they followed them. That Sayers and Sollers took hold of the girl and while she was trying to get away took her over in the pasture. That Sayers threw her down, and she hollowed for Roy Scott to come and help her, and Sayers told her she had to come across. "That he accomplished his purpose and Sollers got his intercourse and I got mine." That Sayers took his again, and then Sollers. That he and Sollers held the prosecutrix while the first act was accomplished and they all held her turn about. That she hollowed and Sayers put his hand over her mouth. That she kept struggling and telling them that they were hurting her. That Orley Sayers, Olie Sayers, and Rolla Sollers and witness went to Hominy Saturday, July 23d, taking the midnight train out of Cushing. That on Monday they went to Bartlesville and were there arrested. That while he was in jail he sent for the county attorney and told him he would be a witness for the state. That he did not know prosecutrix and had not talked with her since the crime was committed.

The defendants took the witness stand. Olie Sayers testified that after they drove by the couple they stopped and watched them and they went into the pasture, and he told Sollers and Endicott to come on and watch what they were going to do, and they saw Scott on the prosecutrix and pretty soon Scott got up off of her and he walked up and Scott walked off and he then had sexual intercourse with her, and when he got through Sollers had intercourse with her, and then Endicott; that she was willing and consented; that he had intercourse with her once or twice afterwards that night; and that before that night he had sexual intercourse with the prosecutrix several times.

Rolla Sollers testified to substantially the same facts, and that he had intercourse with the prosecutrix with her consent, and that there was no force or violence used by any of the defendants.

In rebuttal the state recalled Roy Scott, who testified that he never had intercourse with the prosecutrix.

The prosecutrix, recalled, testified that Roy Scott never at any time had sexual intercourse with her.

As applicable to the issue thus made by the evidence, the court's instructions related wholly to the crime of rape in the first degree, as defined in subdivision 4, sec. 2414, Rev. Laws 1910, already quoted.

The court instructed the jury as to the information, the pleas entered, and the statutory definition of rape in the first degree, and the presumption of innocence, and that:

"The state has elected to rely for a conviction on the first act of the defendant Olie Sayers; therefore, if you find from the evidence in this case, beyond a reasonable doubt, that on July 20, 1911, in Lincoln county, Okla., Olie Sayers violently and forcibly had and accomplished an act of sexual intercourse with Mary Mehringer, a female person, not the wife of the said Olie Sayers, that such act of intercourse was against the will of the said Mary Mehringer, and that she resisted such act, and that her resistance was overcome by said Olie Sayers by force and violence or by the force and violence of the said Olie Sayers, aided and assisted in such force and violence, if any, by Rolla Sollers and Charles Endicott, or either of them, your verdict should be guilty as to the said Olie Sayers, but if you find that said Olie Sayers did not use force and violence in accomplishing such act of sexual intercourse, or that such act was with the consent of the said Mary Mehringer, or that any resistance to such act that said Mary Mehringer may have made to such act was not overcome by the force and violence of the said Olie Sayers or Rolla Sollers, or either or both of them, or if you have a reasonable doubt whether such act was accomplished by force or violence, or whether any resistance that said Mary Mehringer may have made was overcome by force and violence of defendants or either of them, or of Charles Endicott, aiding or abetting him, or was against the will of said Mary Mehringer, your verdict should be not guilty.

"No. 6. You are instructed that the mere fact that the defendant Olie Sayers and said Mary Mehringer engaged in sexual intercourse at the time alleged is not sufficient to constitute the crime of rape in the first degree as charged in the information in this case. Before such an act of sexual intercourse could constitute the crime of rape in the first degree, the said defendant must have accomplished such act against the will of said Mary Mehringer and by means of force and violence

sufficient to overcome the resistance of said Mary Mehringer. Such forcible penetration of the private parts of the prosecutrix, however slight, must have been violently effected by defendant Olie Sayers and the force and violence used by said defendant must have been such as to overcome any reasonable resistance to such act by the prosecutrix. A passive or half-hearted resistance on part of the prosecutrix is not sufficient, but she must have offered the utmost resistance to such act on the part of the defendant, either by forcibly repelling him or by summoning assistance to her aid as was possible under all the circumstances of the situation.

"No. 7. All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals, and if you find from the evidence in this case, beyond a reasonable doubt, aided by these instructions, that the defendant Olie Sayers is guilty of rape in the first degree as charged by the information, and if you further find, beyond a reasonable doubt, that the defendant Rolla Sollers was present at the time and aided and abetted the defendant Olie Sayers in the commission of such crime, the defendant Rolla Sollers would be equally guilty with the defendant Olie Sayers and your verdict should be guilty as to the said Rolla Sollers. But if you find from the evidence that the said Rolla Sollers did not aid or abet the said Olie Sayers in the commission of such crime, if you find the said Olie Sayers to have committed the crime, or if you entertain a reasonable doubt that he did in fact aid and abet him in the commission of such crime, if any, your verdict should be not guilty as to the said Rolla Sollers."

"No. 9. It is admitted in this case that the defendant Olie Sayers and Mary Mehringer had indulged in other acts of sexual intercourse before the time alleged in the information, and in this connection you are instructed that the fact can only be considered by you as a circumstance in determining whether or not the said Mary Mehringer consented or voluntarily yielded to the act of sexual intercourse complained of in this action as constituting the crime of rape in the first degree and for no other purpose.

"No. 10. A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

"No. 14. The defendants are charged with the crime of rape in the first degree, and you cannot find them or either of them guilty of any other offense. Rape in the first degree is punishable by imprisonment in the state penitentiary for a period of not less than ten years, and, if you should find the defendants or either of them guilty, you may by your verdict fix their punishment at imprisonment in the state penitentiary for any period of time not less than ten years."

A general exception was taken to these instructions, but no request was made on behalf of the defendants to instruct the jury in reference to rape in the second degree.

The defendants' counsel now contend that the court erred in instructing the jury that, if they found the defendants guilty, it must be of rape in the first degree, for the reason that the prosecutrix testified that she was sixteen years of age when the rape was committed, and the further reason that there was evidence tending to show that she submitted and consented through fear, which under the statute then in force would be rape in the second degree.

Under the evidence in this case we do not think the contention is well founded. The defendants, as witnesses in their own behalf, testified that the prosecutrix was indulging in sexual intercourse with Roy Scott when they came upon them, and upon their defense she was not within the protection of the statute in that, being over the age of sixteen years and under the age of eighteen, she was not of previous chaste and virtuous character.

The phrase, "previous chaste and virtuous character," means the same in law as in morals. It describes a condition of sexual purity. It means a female who has never voluntarily indulged, out of wedlock, in sexual intercourse.

In *Marshall v. Territory*, 2 Okla. Cr. 136, 101 Pac. 139, it is said:

"A chaste female is one that has never had sexual intercourse —who yet retains her virginity. A virtuous female is one who has not had sexual intercourse unlawfully out of wedlock knowingly and voluntarily.

Upon their trial the defendants had the right to elect upon what ground they would base their defense. Having, however, elected to take the stand as witnesses in their own behalf, and having admitted the act of sexual intercourse charged and relied upon for a conviction, and only denying that the act was accomplished feloniously by force and violence, overcoming her resistance, they thereby committed themselves to the single theory of defense that said act of intercourse was with the consent of the prosecutrix.

The prosecutrix testified that she resisted to the utmost of her physical ability, and that she never did consent through fear or otherwise; the defendants by their testimony rendered any and every other line of defense unavailable; therefore there could be no question of second degree rape in the case. For the reasons stated, the rule announced in the case of *Wines v. State,* 7 Okla. Cr. 450, 124 Pac. 466, relied upon by the defendants' counsel to support their contention, is not applicable.

It is also insisted that the verdict is not sustained by the evidence. While this court has the power to grant a new trial when satisfied that the evidence is insufficient to support the verdict, yet it must observe rules and principles which apply to all courts exercising appellate jurisdiction. Where there is a conflict in the evidence, it is the province of the jury to determine questions of fact and to declare by their verdict what the truth is; and when the issue of fact is so determined upon evidence which is sufficient, even though it may be capable of diverse and opposing inferences, this court has no more right than the trial court to substitute its own judgment for that of the jury. Neither can lawfully usurp the appropriate functions of the jury. We think there is no serious ground for the claim that this is a case which would justify this court in interfering with the facts as determined by the jury.

After a careful consideration of the record, we find that no right of the defendants was prejudiced by any ruling during the trial. Nor have we any reason to doubt that the verdict was reached only upon a fair and full consideration of the case by the jury. While there is much in this somewhat extraordinary

case which might appeal to the executive department of the government, which alone is clothed, in cases of this character, with the attribute of mercy, but with whose prerogative this court has no power or inclination to interfere, we find nothing in the record that would warrant this court in granting a new trial.

The judgment is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.