Jackie R. RIGGS, Petitioner,

v.

Billy J. BRANCH, Sheriff, Garvin County, State of Oklahoma, Respondent.

No. H–76–536.

Court of Criminal Appeals of Oklahoma.

Sept. 2, 1976.

Don Hamilton and Michael Gassaway, and Phillip Lambert, Oklahoma City, for petitioner.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for respondent.

## OPINION

PER CURIAM:

Jackie R. Riggs petitions this Court for a writ of habeas corpus, requesting that he be released from illegal restraint by the above named respondent as he is being held to answer the charge of Murder in the First Degree, 21 O.S.Supp.1973, § 701.1, filed by preliminary information in the Garvin County District Court and that this Statute has been declared unconstitutional by the United States Supreme Court on July 6, 1976, in *Williams v. Oklahoma, 75–6639,* —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed. 2d ——; *Justus v. Oklahoma, 75–6452,* —— U.S. ——, 96 S.Ct. 3216, 49 L.Ed.2d ——; *Rowbotham v. Oklahoma, 75–6638,* —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed.2d ——; *Lusty v. Oklahoma, 75–6453,* —— U.S. ——, 96 S. Ct. 3217, 49 L.Ed.2d ——; *Green v. Oklahoma, 75–6451,* —— U.S. ——, 96 S.Ct 3216, 49 L.Ed.2d ——; and *Davis v. Oklahoma, 75–6637,* —— U.S. ——, 96 S.Ct. 3217, 49 L.Ed.2d —— (1976).

On the 9th day of July, 1976, Riggs was charged by preliminary information in the Garvin County District Court, Case No. CRF–76–375, for the offense of Murder in the First Degree. On the 12th day of July, Riggs filed a petition for writ of habeas corpus in the District Court alleging that the Supreme Court of the United States had declared Oklahoma's First Degree Murder Statute unconstitutional and thus he was being illegally restrained. Upon hearing, the District Court denied relief in an order entered on the 12th day of July, 1976. On the 14th day of July, Riggs filed a petition for writ of habeas corpus in this Court and, pursuant to this Court's order, oral argument was presented on the 20th day of July, 1976, at which time this Court took the matter under advisement.

The issue is whether or not the United States Supreme Court decisions, heretofore cited, have rendered Oklahoma's Homicide Murder Statute, 21 O.S.Supp.1973, § 701.1, et seq., unconstitutional for the reason that the Supreme Court, in declaring the death penalty as provided in 21 O.S.Supp.1973, § 701.3, unconstitutional, has left this statutory scheme without an expressed penalty provision for violation of 21 O.S.Supp.1973, § 701.1, the First Degree Murder provision.

The recent Supreme Court decisions[1] regarding the constitutionality of the death penalty have given rise to serious questions concerning the status of this State's homicide statutes governing particularly the offenses of Murder in the First Degree and Murder in the Second Degree.[2] In reaction to these decisions, the Chief Executive of this State called a Special Session of the Legislature and new statutes governing Murder in the First Degree and Murder in the Second Degree[3] were enacted and

---

1. *Gregg v. Georgia,* —— U.S. ——, 96 S. Ct. 2909, 49 L.Ed.2d —— (1976)

   *Proffitt v. Florida,* —— U.S. ——, 96 S.Ct. 2960, 49 L.Ed.2d —— (1976)

   *Jurek v. Texas,* —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d —— (1976)

   *Woodson et al. v. North Carolina,* —— U.S. ——, 96 S.Ct. 2978, 49 L.Ed.2d —— (1976)

   *Roberts v. Louisiana,* —— U.S. ——, 96 S.Ct. 3001, 49 L.Ed.2d —— (1976)

   and

   *Green v. Oklahoma, 75–6451,* —— U.S. ——, 96 S.Ct. 3216, 49 L.Ed.2d —— (1976)

   *Justus v. Oklahoma, 75–6452,* —— U.S. ——, 96 S.Ct. 3216, 49 L.Ed.2d —— (1976)

   *Lusty v. Oklahoma, 75–6453,* —— U.S. ——, 96 S.Ct. 3217, 49 L.Ed.2d —— (1976)

   *Davis v. Oklahoma, 75–6637,* —— U.S. ——, 96 S.Ct. 3217, 49 L.Ed.2d —— (1976)

   *Rowbotham v. Oklahoma, 75–6638,* —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed.2d —— (1976)

   *Williams and Justus v. Oklahoma, 75–6639,* —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed.2d —— (1976)

2. See, 21 O.S.Supp.1973, § 701.1 et seq.

3. S.B. No. 1, 1976 Special Legislative Session.

signed into law, effective 12:01 a. m., Saturday, July 24, 1976. The new enactment specifically repealed §§ 701.1 to 701.6.

The task now befalls this Court to determine the status of those defendants either charged or having committed the crime of Murder in the First Degree or Murder in the Second Degree, and those defendants convicted of said offenses prior to the effective date of our new murder statutes. We find it appropriate to move with the necessary speed to clarify and attempt to fill what has been termed "the apparent void" in our Murder law prior to the effective date of our new homicide murder statute.

This determination is mandatory as to that class of defendants charged with or committing homicide murder prior to the effective date of our new statute; they cannot be tried under the new statute, as the evidentiary burden of proof under it has been changed to their detriment. Also, the potential punishment for those ultimately convicted of Murder in the Second Degree has potentially increased and therefore that class of defendants cannot be charged under the new statute. To do otherwise in these situations would be to violate the ex post facto provision of the Constitution of the United States, Article 1, Section 10.[4] Also, in *Bouie v. City of Columbia,* 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894, 899, 900 (1964), the Supreme Court noted:

". . . Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. 1, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates* a *crime,* or makes it *greater* than it was, when committed.' . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. . . . " (Citations omitted, footnote omitted)

(Emphasis original)

Further, it has been said that an ex post facto law is one which imposes a punishment for an act which was not punishable at the time it was committed or an additional punishment to that then described or changes the rule of evidence by which less or different testimony sufficient to convict than was required or, in relation to the offense or its consequences alter the situation of a party to his disadvantage. See *Duncan v. Missouri,* 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485. See also, Sutherland on Statutory Construction, Ch. 42, § 40.01. For this reason the new homicide murder statute cannot be applied retroactively by judicial construction.

We also must determine the status of those defendants currently convicted of First Degree Murder and sentenced to death prior to the enactment of the new statute.[5]

A threshold inquiry in resolving the status of these classes of defendants is to

---

4. Article 1, Section 10.
   "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, . . . "

5. *Green v. Oklahoma,* 75–6451, —— U.S. ——, 96 S.Ct. 3216, 49 L.Ed.2d —— (1976)

*Justus v. Oklahoma,* 75–6452, —— U.S. ——, 96 S.Ct. 3216, 49 L.Ed.2d —— (1976)
*Lusty v. Oklahoma,* 75–6453, —— U.S. ——, 96 S.Ct. 3217, 49 L.Ed.2d —— (1976)
*Davis v. Oklahoma,* 75–6637, —— U.S. ——, 96 S.Ct. 3217, 49 L.Ed.2d —— (1976)
*Rowbotham v. Oklahoma,* 75–6638, —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed.2d —— (1976)
*Williams and Justus v. Oklahoma,* 75–6639, —— U.S. ——, 96 S.Ct. 3218, 49 L.Ed.2d —— (1976)

examine the effect of the Supreme Court decisions upon the Oklahoma homicide murder statutes. The statutes affecting these particular classes of defendants are 21 O. S.Supp.1973, § 701.1 et seq.[6] This class will include those defendants convicted of

6. 21 O.S.Supp.1973, §§ 701.1 through 701.6, reads as follows:

"§ *701.1 Murder in the first degree.*— Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being, is murder in the first degree in the following cases:

"1. When perpetrated against any peace officer, prosecuting attorney, corrections employee or fireman while engaged in the performance of his official duties;

"2. When perpetrated by one committing or attempting to commit rape, kidnapping for the purpose of extortion, arson in the first degree, armed robbery or when death occurs following the sexual molestation of a child under the age of sixteen (16) years;

"3. When perpetrated against any witness subpoenaed to testify at any preliminary hearing, trial or grand jury proceeding against the defendant who kills or procures the killing of the witness, or when perpetrated against any human being while intending to kill such witness;

"4. When perpetrated against the President or Vice President of the United States of America, any official in line of succession to the Presidency of the United States of America, the Governor or Lieutenant Governor of this state, a judge of any appellate court or court of record of this state, or any person actively engaged in a campaign for the office of the Presidency or Vice Presidency of the United States of America.

"5. When perpetrated by any person engaged in the pirating of an aircraft, train, bus or other commercial vehicle for hire which regularly transports passengers;

"6. When perpetrated by a person who effects the death of a human being in exchange for money or any other thing of value, or by the person procuring the killing;

"7. Murder by a person under a sentence of life imprisonment in the penitentiary;

"8. When perpetrated against two or more persons arising out of the same transaction or occurrence or series of events closely related in time and location;

"9. When perpetrated against a child while in violation of Section 843, Title 21 of the Oklahoma Statutes; and

"10. Intentional murder by the unlawful and malicious use of a bomb or of any similar explosive."

"§ *701.2 Murder in the second degree.*— Homicide is murder in the second degree in the following cases:

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of a person, or of any other human being, but by an act not enumerated in the preceding section;

"2. When perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; or

"3. When perpetrated without any design to effect the death by a person engaged in the commission of any felony other than the felonious acts set out in Section 1 of this act."

"§ *701.3 Punishment for murder in the first degree—Instructions regarding lesser and included offenses.*—Every person convicted of murder in the first degree shall suffer death. In the case of a jury trial, the jury shall determine only whether the defendant is guilty or not guilty of murder in the first degree and upon a finding of guilty shall so indicate on their verdict and state affirmatively in their verdict that the defendant shall suffer death. In a case where the jury trial is waived and the case is tried to the court, or upon a plea of guilty to the court, upon a finding by the court that the defendant is guilty of murder in the first degree, the court shall enter a judgment and sentence of death. In a jury trial for murder in the first degree, nothing in this section shall preclude the trial judge from instructing the jury regarding lesser and included offenses and lesser degrees of homicide if the evidence warrants such instructions; but in every instance where an instruction authorizes the jury to consider lesser and included offenses and lesser degrees of homicide, the judge shall state into the record his reasons for giving the instruction based upon the evidence adduced at trial."

"§ *701.4 Punishment for murder in the second degree—Indeterminate sentence.*—Every person convicted of murder in the second degree shall be punished by imprisonment in the State Penitentiary for not less than 10 (10) years nor more than life. The trial court shall set an indeterminate sentence in accordance with this section upon a finding of guilty by the jury of murder in the second degree."

"§ *701.5 Review of judgment and sentence of death.*—The Court of Criminal Appeals when reviewing a judgment and sentence of death shall, in the first instance, determine whether errors of law occurring at trial require reversal or modification, but if the Court shall determine that there are no er-

first degree murder and sentenced prior to the Supreme Court decision.

■ The Supreme Court has essentially held that such a statutory scheme in reference to the death penalty is unconstitutional and particularly the six Oklahoma cases before the Supreme Court were vacated insofar as this Court's decisions left undisturbed the death penalties.[7] We therefore conclude the death penalty as provided in 21 O.S.Supp.1973, § 701.3, has been effectively stricken from our statute, which is now repealed. Therefore, the next appropriate inquiry is to determine whether the remaining provisions of our homicide murder statute remain in effect after the striking of the death penalty provision. We are of the opinion that they do and so hold.

In 16 Am.Jur.2d, Constitutional Law, § 186, the rule of severability is thus stated:

". . . If the objectional parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it would be presumed that the legislature would not have passed the residue independently, and accordingly, the entire statute is invalid." (Footnotes omitted)

■ As observed in Sutherland on Statutory Construction, Ch. 42, § 44.20, regarding severability, "The courts have not been slow to recognize the utility of separability principles, and have put them to increasing use. The words of Cardozo, J., 'The whole tendency during recent years, at least, in this court, has been to apply the principle of severance with increasing liberality.'" *People v. Mancuso,* 255 N.Y. 463, 175 N. E. 177, 76 A.L.R. 514 (1931). Undoubtedly expressing the viewpoint of a majority of the courts, the law that has grown up about this branch of statutory construction is not susceptible of clear cut rationalization, despite its frequent use. Severability cases are decided in the light of established principles, but each decision rests largely upon its own particular facts. *City of Farmersville v. Texas-Louisiana Power Co.,* 55 S. W.2d 195 (Tex.Civ.App.1932), and *Texas-Louisiana Power Co. v. City of Farmersville,* 67 S.W.2d 235 (Tex.Com.App.1933). We find it particularly persuasive that the statutory scheme enacted in 21 O.S.Supp. 1973, § 701.1, et seq., included a specific severability clause which reads as follows:

"The provisions of this act are severable and if any part or provision hereof shall be held void the decision of the court so holding shall not affect or impair any of the remaining parts or provisions of this act."

■ Therefore, the appropriate question is whether or not the Legislature intended

rors of law in the record requiring reversal or modification, the Court shall then convene for the purpose of reviewing the sentence of death. The Court shall set a date certain for an evidentiary hearing, the purpose of which will be to determine if the sentence of death comports with the principles of due process and equal protection of the law. Upon the hearing the Court shall determine whether the sentence of death was a result of discrimination based on race, creed, economic condition, social position, class or sex of the defendant of any other arbitrary fact; and the Court shall specifically determine whether the

sentence of death is substantially disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

"§ *701.6 Modification of death sentence.*— Should the Court determine that the sentence of death is discriminatory or is substantially disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, the Court shall modify the sentence of death to life in the penitentiary at hard labor." (Emphasis added)

7. See Footnote 5.

the remaining provisions of the statute in question to be given effect and thus severable if the particular death penalty provision section was declared unconstitutional. We are of the opinion that a constitutionally permissible penalty remains for those committing the crime of murder in the first degree or convicted of said crime prior to July 24, 1976, as will hereinafter be discussed, and thus we find the Legislative intent is to give effect to the severability clause.

The next question is what constitutes the appropriate constitutionally permissible punishment which should befall these particular classes of defendant, those convicted of murder in the first degree, or those committing the offense of murder in the first degree prior to 12:01 a. m. of July 24, 1976. Certainly, 21 O.S.Supp.1973, § 701.3, was the only expressly provided punishment for those individuals convicted of murder in the first degree. The only seemingly alternative punishment was that of life imprisonment which might be imposed by this Court, in lieu of death if, and only if, this Court found grounds for modification or reversal. Particularly persuasive is the first provision of 21 O.S.Supp.1973, § 701.5, which provides in part:

"The Court of Criminal Appeals when reviewing a judgment and sentence of death shall, in the first instance, determine whether errors of law occurring at trial require *reversal* or *modification,* but if the Court shall determine that there are no errors of law in the record requiring *reversal* or *modification,* the Court shall then convene for the purpose or reviewing the sentence of death. . . ." (Emphasis added)

Also, the Court could modify in the instance where the Court found the death penalty was discriminatorily or disproportionately imposed. Having determined the severability of the homicide murder provisions, such modification power would necessarily resolve any question of the sentence that must befall those defendants now convicted of first degree murder and sentenced to death.

However, we are confronted with our recent decision in *Williams v. State,* Okl.Cr., 542 P.2d 554 (1975), wherein we declared the provisions of 21 O.S.Supp.1973, §§ 701.-5 and 701.6, to be unconstitutional.[8] We now, in light of the Supreme Court decisions, find it necessary to reconsider the validity of that holding.

Williams was a defendant convicted of first degree murder who appealed to this Court. The appeal was predicated in part upon the assertion that § 701.1, et seq., were unconstitutional. We, like many other states,[9] were persuaded by *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972), that the only constitutional statutory scheme for the imposition of capital punishment was a scheme wherein no discretion existed. This primary supposition logically led us to conclude that a vested power of modification of a death sentence by this Court would inject a constitutional deficiency into our statutory scheme. This was the basis for our declaring §§ 701.5 and 701.6 unconstitutional.

8. *Williams v. State,* Okl.Cr., 542 P.2d 554, 583, 584 (1975) :
"We are now of the opinion that 21 O.S. Supp.1974, §§ 701.5 and 701.6, are unconstitutional. The provisions regarding the hearing contemplated herein are so vague, indefinite and uncertain that they are incapable of rational interpretation and implementation without additional legislation. Also, such a hearing is duplicitous to that procedure previously established for the presentation of evidence before the trial court upon any legal issue, including such issues as adherence to principles, of due process and equal protection of the law, with this Court then fulfilling the role of appellate review rather than a court of first impression. . . . "

9. See, *Comment, Discretion and the Constitutionality of the New Death Penalty Statutes,* 87 Har.L.Rev. 1690 (1974). Such a statutory scheme would also be compatible with the views as expressed by three of the Justices in the North Carolina case of *Woodson et al. v. North Carolina,* —— U.S. ——, 96 S.Ct. 2978, 49 L.Ed.2d —— (1976).

We find it pertinent to note that we also found that the provision of §§ 701.5 and 701.6 vague and indefinite. This was limited and restricted to the provisions providing for an Evidentiary Hearing upon the sentence of death. However, we do find that our decision in *Williams v. State*, supra, regarding the constitutionality of §§ 701.5 and 701.6 was premised upon an erroneous supposition and was overbroad as the first provision of § 701.5, as heretofore referred to, gives this Court.the general modification power as in other cases.[10] Certainly, the legislative intent was that the alternative punishment of a defendant convicted of first degree murder be life imprisonment, as provided in § 701.6, to-wit:

"Should the Court determine that the sentence of death is discriminatory or is substantially disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, the Court shall modify the sentence of death to life in the penitentiary at hard labor."

■ For this reason we set aside this aspect of our decision in *Williams v. State*, supra, in light of the recent Supreme Court decisions, and we conclude that this Court is vested with the proper modification power under § 701.6, supra, and that the alternative sentence which may be imposed against those individuals convicted of murder in the first degree prior to the effective date of

our new murder homicide statute is life imprisonment.

■ The next determination incumbent upon this Court is to construe the penalty to be imposed upon the particular class of individual committing, but not convicted of, the crime of murder in the first degree prior to 12:01 a. m., July 24, 1976.

The Petitioner suggests that the absence of a specific penalty for murder in the first degree mandates that the provisions of the general felony punishment statute, 21 O.S.1971, § 9, is the only alternative and constitutionally permissible penalty which may be imposed upon the particular class of defendants in question. This suggestion is untenable and unreasonable.

In light of our reconsideration herein of *Williams v. State*, supra, holding constitutional §§ 701.5 and 701.6, supra, we are of the opinion that the appropriate penalty for murder in the first degree is "life in the penitentiary at hard labor," under the 1973 statute.[11] All prior decisions of this Court inconsistent with this opinion are expressly vacated and overruled. It therefore follows that the trial court may only impose a sentence of life imprisonment in the State penitentiary at hard labor.

■ We also hold that the 1973 statutes defining murder in the second degree and prescribing punishment therefor, supra, are

---

10. "22 O.S.1971, § 1066. Power of appellate court.—Return by clerk of lower court when new trial granted. The Appellate Court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court.
"If the case is reversed for a new trial, the clerk of the court from which such cause was appealed is required to make return showing that said case was specifically called to the attention of the trial court at the time of the setting of the docket following receipt of the mandate, and showing

the court's action in placing said cause on the docket for trial, said return to be made immediately after the trial and entry of judgment, or earlier disposal. Should the case not be retried and should it be dismissed by the court, return shall be made, giving the reasons stated by the court in his minutes justifying dismissal. R.L.1910, § 6003; Laws 1953, p. 99, § 2."

11. Even if no statutory punishment existed for murder in the first degree, we would arrive at the same conclusion as did the Supreme Court of the State of Delaware in *State v. Dickerson*, Del.Sup., 298 A.2d 761, that the punishment should be life imprisonment.

constitutional and the *only* punishment therefor is the mandatory punishment of ten (10) years to life imprisonment.

For all of the above and foregoing reasons, the Petition for writ of habeas corpus is *DENIED*.