**Oran LaRue JONES, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F-75-302.**

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1976.

Edward Goldman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael W. Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge.

Oran LaRue Jones, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–2409, for the offense of Murder in the First Degree in violation of 21 O.S.Supp.1974, § 701.1. His punishment was fixed at death, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Glenda Bannister testified that on July 16, 1974, she was employed as a long distance operator by Southwestern Bell Telephone Company; that at 9:22 p. m. she received a call .from a male person who stated that he had been shot at the Chief Motel. She immediately notified the police and the motel personnel next door to the Chief Motel.

Dr. A. Jay Chapman, Chief Medical Examiner for the State of Oklahoma, testified that he performed an autopsy on the deceased, Eelam Stanley, on July 17, 1974; that, in his opinion, Stanley died from a gunshot wound. The pellet entered the shoulder and angled downward approximately thirty-five to forty degrees, passing through the aorta and into the left lung. He identified Exhibit 12 as the bullet he removed from the left lung of the deceased.

Officer Gaylord Fisher testified that he was dispatched to the Chief Motel where he diagrammed and photographed the crime scene. He found the counter had been overturned and discovered two projectile fragments.

Officer Larry Andrews testified that he arrived at the motel at approximately 9:30 p. m. He observed Stanley lying on the floor holding a telephone receiver. He secured the scene, awaiting the arrival of follow-up investigators.

Christine Stanley, wife of deceased, testified that she last saw her husband at approximately 8:40 p. m. on July 16, 1974, at which time they were discussing some financial matters. Mr. Stanley removed $100.00 from his billfold and handed it to her, leaving him approximately $300.00. She testified that Mr. Stanley had additional money in his left rear pocket and approximately $500.00 in the office; that when she returned to the motel at 11:00 p. m., the money bags and money contained therein were missing from the motel office. The padlock had been removed from the cash drawer. She testified that she subsequently received $340.91 from the hospital personnel.

Officer William Tays testified that in his opinion the projectile (State's Exhibit 12) was a .22 caliber.

Vera Lynn Reed testified that on July 16, 1974, she lived with Jimmy Bishop at the Chief Motel. Earlier that day she made a date with Glenn Lawrence who was to arrive after Bishop left for work. Lawrence arrived some time after 8:30 p. m., and shortly thereafter defendant and Robert McAlister arrived at her room. They watched T.V. and visited. Defendant asked if he could talk to her in the bathroom. They went into the bathroom and defendant "asked me why I was with Glenn I needed to be with him." [Tr. 347] She refused his offer, and shortly thereafter defendant and McAlister departed. On cross-examination she admitted giving defendant's attorney a signed statement wherein she stated that defendant was not in her motel room on the evening in question. She further testified that she had

not met defendant prior to July 16th and that she did not see any type firearm.

Glenn Lawrence testified that he arrived at the Chief Motel at approximately 8:30 p. m. on the evening in question; that while walking toward her room, he observed Robert McAlister and the defendant. They talked briefly and asked if they could go with him to the motel room. He visited with McAlister while defendant and Vera went into the bathroom. Defendant came out of the bathroom and asked McAlister if he was ready to go. They departed together. Later that evening he was placed under arrest.

Thomas Richardson testified that he had been acquainted with the defendant for some eight years and with McAlister for four years; that on the evening of July 16, 1974, defendant and McAlister were riding around in Richardson's automobile; that he stopped across the street from the Chief Motel to visit with Ralph Jones. McAlister said that he was going to the motel to use the telephone and defendant followed him. Approximately twenty minutes later he heard a scream and three gunshots. McAlister returned to the car breathing hard. Defendant followed immediately thereafter and stated that he had killed someone. He drove defendant, Ralph Jones and McAlister to Coltrane Road and let them out of the car. On cross-examination, he admitted that he had entered a plea of guilty to the offense of Theft Over Fifty Dollars and was awaiting sentencing. He testified that no promises were made in return for his testimony.

Robert McAlister testified that he had been acquainted with defendant for about five years; that on July 16, 1974, defendant came to his house and they played some pool. They went with Charles Brewster to the community center. Later that evening he and defendant went riding with Tommy Richardson. They observed Ralph Jones across the street from the Chief Motel and stopped to visit with him. McAlister went across the street to use the

pay telephone. He was accompanied by the defendant when they observed Glenn Lawrence. They accompanied Lawrence to Vera Reed's motel room and stayed for a few minutes. He went into the motel office to get a bag of potato chips. Defendant entered the office behind him and stated in a loud voice, "Freeze." Defendant fired one shot and Stanley started running toward the door. Defendant and Stanley began wrestling and another shot was fired. He ran out of the door and back to the car. Defendant arrived shortly thereafter and stated that he had "killed a man, shot a man." [Tr. 476]

On cross-examination he testified that he lived with his parents and went to Douglass High School; that there had been no previous conversation about a robbery and that he did not see defendant with a gun until he observed it in the office. He admitted, on several occasions, that his testimony as to certain details was inconsistent with his testimony at prior hearings.

For the defense, Christopher Buttram testified that in July of 1974, he was employed as a supervisor of the Hamilton Courts Recreation Center. On July 16, 1974, the center was open between the hours of 5:00 and 10:00 p. m.

Sharon Norwood testified that she had received a telephone call from the defendant on July 15, 1974. They ate lunch and subsequently spent the night together. The following day defendant left her home at approximately 11:00 a. m. She did not see the defendant again until he returned that evening at approximately 10:00 p. m. Defendant stayed with her on July 17th and July 18th, and at no time did he mention a robbery or shooting. On the 18th day of July the police came to her place of employment and she accompanied them to her home where defendant was arrested.

Lillie Woody, Sharon Norwood's mother, testified that she went riding with the defendant and Sharon on July 17, 1974. At no time did defendant mention a robbery at the Chief Motel.

Melvin Franklin testified that on the evening of July 16, 1974, he attended a class reunion at a location across the street from the Chief Motel. As he was leaving at approximately 9:00 p. m., he heard what sounded like a gunshot. Immediately thereafter he observed three young men walking fast on Highland Street. They got into a car and took off faster than normal. The following day he read about the incident and contacted the Oklahoma City Police Department. He was never subsequently contacted by the Police Department concerning the incident.

Vernon Moore, the Assistant Principal of Douglass High School, testified that Robert McAlister was currently a student at the school.

Lee Daniels Starr testified that he observed the defendant one evening in July, 1974, playing pool at Hamilton Courts from approximately 7:00 p. m. until closing time at 10:00 p. m.

The defendant testified that he resided with his mother in Oklahoma City and he had been convicted of the offense of Grand Larceny in 1972. In July of 1974, he resided in Seattle, Washington. He took a vacation to come to Oklahoma City to visit his family. He arrived in Oklahoma City on July 14th, and stayed with his mother. The following evening he met Robert McAlister's mother, whom he had previously known from the 23rd Street Lounge. On July 16th he left Sharon Norwood's house at about 11:00 a. m. He subsequently went to Gwen McAlister's house to visit her. Robert answered the door and said his mother was not in, but would be back shortly. They went together to Hamilton Courts Recreation Center arriving around 5:00 p. m. They stayed at the center until it closed and then went back to Sharon's home where he spent the night. He testified that he did not rob or kill Eelam Stanley. He denied owning a .22 caliber gun. On cross-examination he testified that he did not ever have any .22 caliber bullets and denied that any shells

were found on the chest of drawers in Sharon Norwood's bedroom.

In rebuttal, Officer Jim Woody testified that he assisted in the arrest of the defendant at a residence on N.E. 10th Street. Defendant was in a bedroom and pursuant to his arrest Officer Woody seized State's Exhibit No. 17, the bullets, from the top of a desk located in the bedroom.

In light of the United States Supreme Court's rulings on July 6, 1976, in *Williams v. Oklahoma,* — U.S. —, 96 S. Ct. 3218, 49 L.Ed.2d 1215; *Justus v. Oklahoma,* — U.S. —, 96 S.Ct. 3216, 49 L. Ed.2d 1214; *Green v. Oklahoma,* — U.S. —, 96 S.Ct. 3216, 49 L.Ed.2d 1214; and *Davis v. Oklahoma,* — U.S. —, 96 S.Ct. 3217, 49 L.Ed.2d 1215 (1976), we will first consider the defendant's second assignment of error that the imposition of the death penalty is cruel and unusual punishment. This contention was rejected by a majority of the Court in *Woodson, et al. v. North Carolina,* — U.S. —, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* — U.S. —, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); *Gregg v. Georgia,* — U.S. —, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and *Proffitt v. Florida,* — U.S. —, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Although a majority of the Court did not hold the death penalty to be cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution, the Supreme Court of the United States vacated the opinions of this Court insofar as they left undisturbed the death sentences and remanded these cases for reconsideration of this Court in light of *Woodson, et al. v. North Carolina* and *Roberts v. Louisiana,* supra. In compliance with the directive of the Supreme Court of the United States, this Court reconsidered the opinions previously rendered and vacated and set aside the opinions insofar as they were inconsistent with *Riggs v. Branch,* Okl.Cr., 554 P.2d 823 (1976) all of which were delivered on the 2nd day of September, 1976. In *Riggs*

*v. Branch,* supra, we held that the only appropriate punishment that could be imposed in the trial court was a judgment and sentence of life imprisonment at hard labor.

We are, therefore, of the opinion, that this assignment of error is without merit.

▮ This leads us to a consideration of the defendant's first assignment of error that the trial court erred in excusing for cause two jurors who said "that to vote for the death penalty would do violence to their conscience." Defendant argues that the exclusion of the jurors who voiced objections to the death penalty or expressed conscientious or religious scruples against its infliction is in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have carefully examined the voir dire on examination of the two respective jurors excused for cause, and find that the court's rulings were proper. Each juror expressed personal reservations concerning his ability to consider the death penalty even though he believed the defendant was guilty of the offense.

In light of *Riggs v. Branch,* supra, the only appropriate sentence which could constitutionally have been imposed by the trial court in the instant case was life imprisonment at hard labor. This being true, the trial court's action in excusing the jurors, if error, would not require reversal in light of *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), wherein the Supreme Court held *Witherspoon* inapplicable where a sentence of life imprisonment was imposed. Were this case to be retried, the trial court could not impose more than a life sentence.

▮ The third assignment of error is that the Assistant District Attorney made prejudicial and inflammatory remarks in his summation to the jury. The record reflects that the Assistant District Attorney stated:

"You are the people more than likely that have talked at home, what are we gonna do about these senseless killings, these robberies-execution-type killings, what are we gonna do about them? Probably at the time, not ever realizing that you were gonna be on a Jury in Oklahoma County. And have a chance to do something about it because you have got him right over there. That is Oran Larue Jones, under this evidence a murderer an executioner under this evidence that you have heard here in this Courtroom. And you have got a chance to do something about it," [Tr. 680–681]

The record does not reflect that the defendant objected to the Assistant District Attorney's remarks. We have repeatedly stated that a defendant must not only object to improper statements, but must also move that it be stricken from the jury's consideration unless the remarks were of such character that the error would not be cured by withdrawal of the remarks. In absence of such objection and motion to exclude the contention that argument was prejudicial and inflammatory cannot be presented for the first time on appeal. See, *Neal v. State,* Okl.Cr., 506 P.2d 936 (1973). We are of the opinion that the Assistant District Attorney's remarks were not so prejudicial as to deprive the defendant of his constitutional right to a fair and impartial trial and were reasonable arguments supported by the record. We, therefore, find this assignment of error to be without merit.

▮ The fourth assignment of error is that improper rebuttal evidence was presented by the State. Defendant argues that State's Exhibit No. 17 was not properly identified, that it was obtained by an illegal search and seizure and, further, that the evidence should have been introduced in chief rather than in rebuttal. From an examination of the entire record, it is clear that the evidence complained of was found in the bedroom in which the defendant was arrested and, therefore, was admissible as a result of a search and seizure incident to a lawful arrest. The defendant's assertion that the trial court erred in admitting such evidence in rebuttal rather than in chief, is

likewise without merit. In *Davie v. State*, Okl.Cr., 414 P.2d 1000 (1966), we cited with approval *Edwards v. State*, 87 Okl.Cr. 399, 198 P.2d 656 (1948), as follows:

" 'Either party is entitled to introduce evidence to rebut that of the other, and where the state offers relevant testimony in rebuttal, the fact that such evidence might have been introduced in chief does not necessarily prevent its introduction as evidence in rebuttal. The introduction of such evidence is a matter of discretion of the trial court, and will not be ground for reversal unless an abuse of this discretion is shown.' "

The fifth assignment of error is that the testimony of the two accomplices, Richardson and McAlister, was not corroborated. We observe that the jury was properly instructed that if they found that Richardson and McAlister were accomplices of the defendant, then their testimony must be corroborated by independent evidence tending to connect the defendant with the crime. See, *Williams v. State*, Okl.Cr., 518 P.2d 322 (1974). We are of the opinion that assuming the jury did find McAlister and Richardson to be accomplices then their testimony was corroborated by independent evidence. Witnesses Vera Lynn Reed and Glen Michael Lawrence placed the defendant at the scene of the crime with McAlister. Other evidence adduced that the deceased was killed with a .22 caliber firearm and that .22 caliber shells were found in the near proximity where defendant was arrested. This Court has previously held that it is not necessary that the corroborative evidence cover every material point in the accomplice's testimony, but it must be of some substantial fact, or facts, tending to connect the defendant with the crime. *Howerton v. State*, 65 Okl.Cr. 457, 88 P.2d 904 (1939). We are of the opinion that this assignment of error is without merit.

The sixth assignment of error is that the trial court committed prejudicial error in giving instructions 15 and 16.

The record reflects that the trial court advised the jury in instruction No. 15, as follows:

"Certain evidence has been introduced tending to show that the defendant has heretofore been convicted of other and distinct offenses from that charged in the information. This evidence was not admitted as tending to prove guilt or innocence of the defendant of the specific offense charged in the information in this case, but should you find from the evidence that such other conviction has been had, you may, in your discretion, consider the same, as such facts may or may not, in your judgment, affect the weight and credit which you will give to the testimony of the defendant, but for no other purpose. A person may not be convicted of the commission of one offense by any proof tending to show that he may or may not have committed another offense."

Jury instruction No. 16 stated:

"In considering the testimony of a witness who the evidence shows has heretofore been convicted of an offense, you may consider such fact of conviction as it may or may not in your judgment affect the weight or credit you will give to the testimony of such witness."

The record further reflects that the defendant admitted a conviction of Grand Larceny and that witness Richardson entered a plea of guilty to Theft Over Fifty Dollars. We, therefore, conclude that not only did the trial court correctly advise the jury regarding these convictions, but would have been remiss in his duty had he failed to give such instructions. See, *Davis v. State*, Okl.Cr., 272 P.2d 478 (1954).

The seventh assignment of error is that the trial court erred in submitting the case to the jury on the question of sufficiency of the evidence as to armed robbery. We disagree. Mrs. Stanley testified that she last talked to the deceased at approximately 8:40 p. m. on the evening in question. The deceased removed $100.00 from his

billfold leaving him approximately $300.00. She further testified that the deceased had additional money in his left rear pocket and she estimated the amount of money in the office cash drawer as not less than $500.00. She testified that the cash drawer was secured by a padlock. When she returned to the motel at approximately 11:00 p. m., the padlock had been removed from the cash drawer and the money and money bags were missing. The registration counter had been overturned and various items were strewn about the floor. She subsequently found $35.00 in small change inside the office counter and $340.91 was recovered from the deceased's person. No other money or the deceased's billfold was recovered.

 Robert McAlister testified that the defendant entered the motel office, stated "freeze" or "hold it," fired the gun and wrestled with the deceased. McAlister ran from the office in Richardson's car and was subsequently joined at the car by the defendant. We, therefore, conclude that there was sufficient evidence, although circumstantial, of the armed robbery to warrant submitting the case to the jury.

 In his eighth assignment of error, defendant contends that the Assistant District Attorney asked excessive, leading questions. The record supports defendant's contention that the Assistant District Attorney propounded leading questions to the witness and was admonished by the trial court on several occasions to not lead the witnesses. The record further reflects that the attorney for the defendant also propounded leading questions to the witnesses and was also admonished by the trial court. We have carefully considered the entire record and are of the opinion that the misconduct of the Assistant District Attorney was not so prejudicial as to essentially affect the jury's verdict. See, *Severs v. State*, Okl.Cr., 477 P.2d 695 (1970).

 The ninth assignment of error is that the evidence was wholly insufficient to warrant its submission to the jury. Inasmuch as we have previously found assignments of error five and seven to be without merit, we likewise find this assignment to be without merit.

 The tenth assignment of error is that the trial court erred in admitting hearsay evidence over the objections of the defendant. Defendant argues that certain portions of testimony elicited from Mrs. Stanley were a violation of the hearsay rule. The record reflects that the following questions were propounded to Mrs. Stanley, and answers received:

"Q. And what was the purpose of your sitting there in the driveway with him?

"A. We were talking about our financial situation.

"Q. And what was there about it that you were talking about?

"MR. GOLDMAN: Excuse me, I object to that. Hearsay.

"THE COURT: You are not gonna be able to repeat the conversation now, that is hearsay.

"(Whereupon, the following proceedings were had at the Bench outside the hearing of the Jury.)

"MR. McKINNEY: This conversation she's having with her husband. It is not hearsay.

"THE COURT: With the deceased at that time?

"MR. McKINNEY: Uh-huh. I want to show that he gave her money at that time and what it was for and that he had money.

"THE COURT: All right. That is right. Be overruled.

"MR. GOLDMAN: Please note my exception.

"(Whereupon, the following proceedings were had in the hearing of the jury.)

"BY MR. McKINNEY:

"Q. You may answer as to what you were talking about in the way of finances.

"A. We were talking about our finances because we had carpenters working at the motel and our property in McCloud and we were trying to figure out how much we could allot to each thing." [Tr. 300–301]

It is thus readily apparent that the purpose of the questions was that the deceased had money on his person rather than to elicit the details of a conversation. The witness did not repeat her husband's portion of the conversation, but rather generally described the nature of the conversation. In *Maiden v. State*, Okl.Cr., 273 P.2d 774 (1954), in paragraph 5 of the Syllabus, we stated:

"The reception of hearsay evidence over objection is error. Whether it is reversible error depends upon all the facts and circumstances of the case and the prejudicial effect which the reception of such evidence might have had on the jury."

Assuming arguendo that the statement was, in fact, hearsay, we cannot ascertain that the statement was in any way prejudicial to the defendant. We, therefore, find this assignment of error to be without merit.

■ The final assignment of error is that the trial court erred in failing to instruct the jury on the lesser included crime of Murder in the Second Degree. We agree with the trial court's reasoning during the settling of the instructions when the court stated:

"Now, first of all, let me say this, gentlemen: The way I understand the law and the statutes of the State, under the new murder law this case is tried on the theory of armed robbery and premeditated murder.

"The defense among one defense is alibi. The other defense that's been raised here by the Defendant is two of the witnesses are accomplices.

"Now, the way I see it and see the evidence in the case, number one is: I don't know of any reason why I should instruct on an included offense. I don't know of any evidence that's been brought forth to show any included offense.

"It appears to this Court that the crime that would be submitted to this Jury, number one, would be murder in the first degree and that is all.

"Now, I want to hear either side if you think there is an included offense shown and if so why.

"MR. McKINNEY: The State agrees with the Court that it is murder one or nothing.

"THE COURT: That is the way I see it. Mr. Goldman, what do you say about that?

"MR. GOLDMAN: I don't think they have proven that the robbery occurred.

"THE COURT: The State has made out a prima facie case of robbery and murder. Do you think there is an included offense and if so what do you think it is and why should I instruct on it?

"MR. GOLDMAN: Well, one of the requirements for Murder I in this case would be the robbery. I don't think the State has proven a robbery.

"THE COURT: So you think what we should instruct on—

"MR. GOLDMAN: Whatever the Court thinks would be appropriate without a robbery being there.

"THE COURT: All right. What else do you want to say?

"MR. GOLDMAN: That is all I have.

"THE COURT: Okay. The Court is of the opinion from the evidence in this case there is no included offense involved in it. It is Murder in the first degree or nothing." [Tr. 648–649]

In the recent case of *Wiley v. State*, Okl. Cr., 551 P.2d 1146 (1976), we stated:

"The defendant's final assignment of error contends that the trial court erred in failing to submit manslaughter instructions to the jury. We must disagree. In *Harrison v. State*, Okl.Cr., 461 P.2d 1007, this Court citing *Newby v. State*,

17 Okl.Cr. 291, 188 P. 124, and *Sayers et al. v. State*, 10 Okl.Cr. 233, 135 P. 1073, held that when a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one.

"In the instant case the defense was that defendant did not fire at the victim but shot in the air, and that the fatal shot was in fact fired by one William Washington. The defendant was either innocent or guilty of Murder in the Second Degree and the trial court committed no error in failing to submit a manslaughter instruction to the jury. The defendant's last assignment of error is without merit."

On examining the record as a whole, it is apparent to this Court that the defendant received a fair and impartial trial before a jury; however, in light of *Riggs v. Branch*, supra, and cases cited therein, the judgment and sentence appealed from is *MODIFIED* from death by electrocution, to life imprisonment at hard labor, and as so *MODIFIED*, the judgment and sentence is *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.