Don ROBERTS and Glynn Ray
Simmons, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–75–529.

Court of Criminal Appeals of Oklahoma.

May 9, 1977.

Don Anderson, Public Defender, Oklahoma County, for appellant Roberts.

Jack L. Freeman, Oklahoma City, for appellant Simmons.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Don Roberts and Glynn Ray Simmons were charged in the District Court, Oklahoma County, Case No. CRF–75–551, for the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1974, § 701.1. They were convicted by the jury and sentenced to death. From said judgments and sentences, an appeal has been perfected to this Court.

At the trial, Norma Hankins testified that on December 30, 1974, she was employed at the Edmond Liquor Store at 729 South Broadway in Oklahoma County, Oklahoma. At approximately 9:20 p.m. the store was robbed by two black men. The heavier-set man shot the other clerk, Carolyn Sue Rogers, as she was making a telephone call. He told her to open the cash registers. The smaller man removed the money from the register. She bent down to

pick up some money which had fallen to the floor and heard another shot. When she raised up she observed that the men had left the store and that a customer who had apparently entered the store had blood on her hand. She testified that she could not identify either of the robbers because she "wasn't looking at anything except the gun." [Tr. 171]

Belinda Sue Brown testified that she went to the Edmond Liquor Store on the evening in question, arriving at approximately 9:30 p.m. She walked into the store and observed two men, whom she identified in court as defendant Roberts and defendant Simmons. She walked past them and "the next thing I knew I was sitting on the floor, I had been shot in the head." [Tr. 184]

On cross-examination, she testified that she was eighteen years old and had planned to use a false I.D. card to purchase a bottle of tequila. She further testified that she attended approximately eight lineups, but did not identify any persons other than the defendants.

Johnny Delbrio, age sixteen, testified that on December 30, 1974, at about 9:20 p.m., he was walking to the Lincoln Plaza Youth Center in Edmond. He observed a car containing two men pass him on three occasions in the vicinity of a liquor store. He identified defendant Roberts as being a passenger in the vehicle.

On cross-examination, he testified that he could not identify the driver of the vehicle. He further testified that he did not identify defendant Roberts when he first attended a lineup.

Dr. A. Jay Chapman testified that he performed an autopsy on the body of Carolyn Sue Rogers on December 31, 1974. The cause of death, in his opinion, was a gunshot wound to the head. He identified State's Exhibit No. 2 as a box containing a lead bullet which he removed from the skull of the victim.

Detective Anthony Garrett testified that he went to the Edmond Liquor Store on the evening in question where he observed two females lying on the floor of the store. He identified State's Exhibits 3, 4 and 5 as photographs of the scene.

Officer Gary Carson testified that he arrived at the liquor store at approximately 9:45 p.m. He observed money laying on the counter and spots of blood on the floor. He identified State's Exhibit No. 2 as a cardboard box he received from Dr. Chapman. He delivered the box to Ray Lambert of the Oklahoma State Bureau of Investigation.

Ray Lambert testified that he received State's Exhibit No. 2 from Gary Carson, and stated it contained a .22 caliber short bullet.

For the defense, Doris Jean Frazier, the sister of defendant Roberts, testified that on December 30, 1974, Roberts came to her home in Dallas at 10:00 a.m. He spent the day there and did not leave until 8:00 o'clock that evening.

Defendant Roberts testified that in December, 1974, he was employed by a Thrift Store organization in Dallas. On the morning of December 30th, he went to his sister's house to borrow money to purchase gas for his automobile. He remained there until approximately 7:30 p.m. He testified that he was not acquainted with defendant Simmons prior to January 19, 1975, when they met at his brother-in-law's home.

Defendant Simmons testified that on December 30, 1974, he was in Harvey, Louisiana. He spent the day playing pool at the Agnus Pool Hall and Joe's Lounge with friends. He had never been to the State of Oklahoma prior to January 5, 1975.

Ronald Murphy testified that in January, 1975, he appeared in a lineup in relation to the murder at the Edmond Liquor Store. He was identified by a witness. He was released from jail only after it was ascertained that he was working on the evening in question.

Dorothy Norris testified that she saw defendant Simmons in Harvey, Louisiana, on the afternoon of December 30, 1974. She also saw him the following morning.

Robert Antoine testified that he observed defendant Simmons on the evening of De-

cember 30, 1974, at the Agnus Pool Hall in Harvey, Louisiana. He specifically remembered the date because they had a party the following evening on New Years Eve.

Richard Wilson testified that he was with defendant Simmons on the afternoon and evening of December 30th playing pool in Harvey, Louisiana. He was also with the defendant the following day at a football game.

John Bradley testified that he observed defendant Simmons at Joe's Pool Hall in Harvey on December 30th at approximately 11:00 p.m. Defendant watched him play pool until the early morning hours of the following day.

Belinda Brown was recalled and admitted there was discrepancy in her testimony at the preliminary hearing and at the trial concerning whether defendant was wearing a beard.

In rebuttal, Deputy Richard Mack testified that he was present when Ronald Murphy appeared at a lineup. None of the witnesses identified Murphy at the lineup.

Detective Garrett testified that Ronald Murphy only appeared in one lineup and was not identified by any witness.

■ Defendant Simmons first asserts that the United States Supreme Court, by declaring 21 O.S.Supp.1974, § 701.3 unconstitutional, thereby rendered the entire act (21 O.S.Supp.1974, § 701.1 through § 701.6) unconstitutional, notwithstanding its severability clause, since such an alteration would change the declared public policy of the Act. We must disagree. In dealing with a similar assignment of error in the recent case of *Clark and Clark v. State,* Okl.Cr., 558 P.2d 674 (1977), we stated:

"We now deal with the defendants' final assignment of error which alleges the unconstitutionality of 21 O.S.Supp.1974, § 701.1 due to *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This issue was determined by this Court in *Riggs v. Branch,* Okl.Cr., 554 P.2d 823 (1976). We therein held that the United States Supreme Court's decisions in *Woodson v. North Carolina,* 428 U.S.

280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), left unaffected the validity of the 1973 Oklahoma Statutes defining First Degree Murder. Our conclusion in *Riggs,* supra, was that the Supreme Court's decisions prohibited only the imposition of the death penalty in those cases where the jury had no discretion in the rendering of that sentence. . . ."

Defendant Simmons asserts, in the second assignment of error, that the trial court erred in instructing the jury on the offense of Murder in the First Degree in that it was based upon law contained in an unconstitutional statute. Under the authority cited in the first assignment of error, we are of the opinion that this assignment is likewise without merit.

■ Both defendants assert, in the third assignment of error, that the verdict is contrary to the weight of the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970). From the foregoing statement of facts, we are of the opinion that the verdict is based upon, and is supported by, competent evidence.

■ Defendant Roberts contends, in the final assignment of error, that should this Court find that the verdict is supported by sufficient evidence that the death sentence should be modified. Because of our holding in *Riggs v. Branch,* supra, we agree with this assertion. The judgments and sentences are accordingly MODIFIED to life imprisonment and as so modified the same are AFFIRMED.

BLISS, J., concurs.

BRETT, J., dissents.