**Alfred X. BROOKS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–125.**

Court of Criminal Appeals of Oklahoma.

June 30, 1977.

John T. Elliott, Public Defender, Oklahoma County, Michael Jackson, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Alfred X. Brooks, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–4415, for the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1973, § 701.1. His punishment was fixed at death and from said judgment and sentence an appeal has been perfected to this Court.

At the trial, Karen Trantham testified that on the evening of August 2, 1974, she and her roommate, Judy Webb, went to several clubs; and that at approximately midnight they went to the Apartment Key Club on N.W. 10th in Oklahoma City. They got out of their car and started walking toward the club. Two black men came up behind them. One of the men, whom she identified in court as defendant, had a gun and ordered them to get back into their car. Defendant sat on the passenger side and the other black male drove the car. The defendant handed them their purses and told them to give him their money. Both girls were ordered to disrobe. They drove to an isolated area in the country and were placed in the trunk of the vehicle. They remained in the trunk for approximately two hours. The car subsequently stopped at a place in the country in the 6500 block on Coltrane in Oklahoma County. Defendant told them to get out of the trunk and be calm. Defendant followed them as they walked away from the car; they went over a ditch and through a fence.

The witnesses saw the gun in defendant's left hand as they walked. After they had gone about 20 or 30 feet past the fence, defendant started shooting. She was struck in the hand, cheek, neck and in the back. She laid very still pretending to be dead until she heard the car drive away. Judy was lying on the ground not making any noises. She walked to a nearby house to obtain help.

On cross-examination she admitted consuming several glasses of beer and one mini bennie prior to arriving at the Key Club.

The parties stipulated that State's Exhibit No. 6, the autopsy report made by Dr. Fred B. Jordan, could be admitted into evidence, which established the cause of death of the decedent, Judy Webb, as death by gunshot.

Defendant testified that he was a member of the Nation of Islam and on the evening of August 2, 1974, he attended a meeting at the temple. The minister of the temple, Theodore G. X. instructed defendant to meet them at his house later that evening. He changed clothes and caught a ride to the residence of Theodore G. X. They left together in Theodore's car. He admitted seeing Judy Webb and Karen Trantham. He denied robbing or shooting them.

On cross-examination he testified that Theodore gave him a .357 revolver. Theodore told him that they would take the girls out somewhere and leave them. He admitted pointing the gun at the girls and placing them back into their car. Theodore told him to order the girls to disrobe. The girls were subsequently placed in the trunk at Theodore's suggestion. They drove to a location on Coltrane. Theodore told them to walk toward the woods. As the girls were walking away, Theodore started firing the gun.

Detective Bill Snipes testified in rebuttal that he was present during the interrogation of the defendant during the month of August, 1975. Defendant was advised of his constitutional rights and voluntarily waived the same. Defendant stated that he had the gun and Theodore G. X. said "go ahead and shoot 'um, shoot 'um." He did not react fast enough and Theodore G. X. grabbed the gun and shot the girls.

■ Defendant first asserts that he was deprived of a fair and impartial trial due to the prosecutor's reference to him as a liar. The record reflects that during the cross-examination of the defendant, the following transpired:

"MR. IGMIRE: Your Honor—

"THE COURT: —of any gun that went to California.

"MR. IGMIRE: Well, showing the inconsistent statements he has given, Your Honor, and that he is a liar.

"MR. PORTER: That's what you say." (Tr. 422).

We have repeatedly held that where counsel feels an objectional statement has been made, it is necessary that it be called to the attention of the court by a timely objection, together with a request that the jury be instructed to disregard the improper statement, but if an objection is not made, the party failing to object will be deemed to have waived any objection unless the statement was so fundamentally prejudicial that the error could not be corrected by an instruction to the jury. See, *Russell v. State*, Okl.Cr., 528 P.2d 336 (1974). While we do not condone the language used by the prosecuting attorney, we do not find that the remark affected defendant's rights so as to require reversal.

Defendant contends in the second assignment of error that the trial court gave inconsistent and contradictory instructions to the jury. The record does not reflect that the defendant objected to the court's instructions nor did defendant submit written requested instructions.

"We have consistently held that where counsel is not satisfied with instructions that are given or desires the court to give any particular instruction, or to more definitely or sufficiently state any proposition embraced in the instructions, it is the duty of counsel to prepare and present to the court such desired instructions and to request that they be given. In absence of such request, the Court of Criminal Appeals will not reverse if instructions given, generally cover subject matter of inquiry." *Moreau v. State*, Okl.Cr., 530 P.2d 1061 (1975).

We have carefully examined the trial court's instructions and are of the opinion that considered as a whole, they correctly and accurately state the law within the subject matter of inquiry. We therefore find this assignment of error to be without merit.

Defendant finally asserts the unconstitutionality of 21 O.S.Supp.1973, § 701.1. This issue was determined by this Court in *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976) wherein we held that the United States Supreme Court's decisions in *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) prohibited only the imposition of the death penalty in those cases where the jury had no discretion in the rendering of that sentence.

The judgment and sentence is accordingly MODIFIED to life imprisonment and as so MODIFIED the same is AFFIRMED.

BRETT, J., concurs.